| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Shannon Doyle, Esq. (SBN 207291)<br>Ghidotti \| Berger LLP<br>1920 Old Tustin Ave<br>Santa Ana, CA 92705<br>Ph: 949-427-2010<br>Fax: 949-427-2732<br>bknotifications@ghidottiberger.com<br>25-000957-9 | |
| ☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>Marmar Bedford, LLC | CASE NO.: 2:25-bk-20775-BB<br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| Debtor(s). | DATE: February 24, 2026<br>TIME:  2:00 p.m.<br>COURTROOM: 1539 |

**Movant:** U.S. Bank Trust Company, National Association, not in its individual capacity, but solely as trustee on behalf of PRPM 2024-NQM2 Trust, its successors and/or assignees

1. **Hearing Location**:

☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701

☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101

☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                 Page 1                                 **F 4001-1.RFS.RP.MOTION**

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  01/20/2026

Ghidotti Berger, LLP
_____
Printed name of law firm (if applicable)

Shannon Doyle, Esq. (SBN 207291)
_____
Printed name of individual Movant or attorney for Movant


/s/ Shannon Doyle
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

**1. Movant is the:**

☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

☐ Other (*specify*):

**2. The Property at Issue (Property):**

a. Address:

*Street address*: 1226 S Bedford Street
*Unit/suite number*:  Unit 502
*City, state, zip code*: Los Angeles , CA 90035

b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit   2    ):  Deed of Trust recorded on 2/22/2024 as Document No. 20240115952 in Los Angeles County.

**3. Bankruptcy Case History:**

a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13 was filed on (*date*)  12/02/2025  .

b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

c. ☐ A plan, if any, was confirmed on (*date*) _____.

**4. Grounds for Relief from Stay:**

a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

(1) ☒ Movant's interest in the Property is not adequately protected.

  (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

  (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

  (C) ☑ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

(2) ☐ The bankruptcy case was filed in bad faith.

  (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

  (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

  (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

  (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

  (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

  (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                        Page 3                        **F 4001-1.RFS.RP.MOTION**

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:


6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☑ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒ Other:
Exhibits: (1- Promissory Note, 2- Recorded Deed of Trust, 3- Guaranty, 4-Assignment, 5- Broker's Price Opinion, 6- Debtor Schedules A, D, 7- Payoff, 8-Recorded Notice of Default, 9- Recorded Notice of Sale; Property Tax Statements; 11 - Apartment.com Listing)

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                Page 4                          **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  01/20/2026

Ghidotti Berger, LLP
_____
Printed name of law firm (*if applicable*)
Shannon Doyle, Esq. (SBN 207291)
_____
Printed name of individual Movant or attorney for Movant

/s/ Shannon Doyle
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) _Lisa L Johnson_____ , declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a.  ☐  I am the Movant.

    b.  ☐  I am employed by Movant as (*state title and capacity*):

    c.  ☒  Other (*specify*): I am employed by Fay Serviving, LLC, servicer for Movant.

2.  a.  ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (*see attached*):

3.  The Movant is:

    a.  ☒  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 1_____.

    b.  ☒  Beneficiary: Movant is either (1) named as benefiiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit 2 & 4_.

    c.  ☐  Servicing agent authorized to act on behalf of the:
        ☐ Holder.
        ☐ Beneficiary.

    d.  ☐  Other (*specify*):

4.  a.  The address of the Property is:

        *Street address*: 1226 S Bedford Street
        *Unit/suite no.*: Unit 502
        *City, state, zip code*: Los Angeles , CA 90035

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
        See attached Exhibit for recorded Deed of Trust

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                      Page 6                              F 4001-1.RFS.RP.MOTION

5. Type of property (*check all applicable boxes*):

a. ☐ Debtor's principal residence          b. ☒ Other residence
c. ☐ Multi-unit residential               d. ☐ Commercial
e. ☐ Industrial                           f. ☐ Vacant land
g. ☒ Other (*specify*): Rental Property

6. Nature of the Debtor's interest in the Property:

a. ☒ Sole owner

b. ☐ Co-owner(s) (*specify*):

c. ☐ Lienholder (*specify*):

d. ☐ Other (*specify*):

e. ☒ The Debtor ☒ did ☐ did not list the Property in the Debtor's schedules.

f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
   The deed was recorded on (*date*) _____.

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 2____.

b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
     attached as Exhibit 1____. A true and correct copy of the Guaranty as Exhibit "3"

c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
     trust to Movant is attached as Exhibit 4____.

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 928,026.80 |
| b. | Accrued interest: | $ | $ | $ 76,368.90 |
| c. | Late charges | $ | $ | $ 1,392.42 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 46,401.34 (prepayment penalty) $ 10,100.04 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 96,839.89 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[192.50          ] |
| g. | TOTAL CLAIM as of (*date*): | $ | $ | $1,158,936.89 |

h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):

a. Notice of default recorded on (*date*) 07/22/2025___ or ☐ none recorded.

b. Notice of sale recorded on (*date*) 11/10/2025___ or ☐ none recorded.

c. Foreclosure sale originally scheduled for (*date*) 12/03/2025___ or ☐ none scheduled.

d. Foreclosure sale currently scheduled for (*date*) 02/02/2026___ or ☐ none scheduled.

e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $ 13,544.02_____ for the month of December____ 2025 .

   b. Number of payments that have come due and were not made: 9____ . Total amount: $ 124,730.16_____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

   An additional payment of $ 9,124.48_____ will come due on (*date*) 01/01/2026___, and on the 1st___ day of each month thereafter. If the payment is not received within 15___ days of said due date, a late charge of $ Per the Note_____ will be charged to the loan.

   d. The fair market value of the Property is $ 1,190,000.00_____, established by:

   (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____ .

   (2) ☒ A real estate broker or other expert's declaration regarding value is attached as Exhibit 5____ .

   (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____ .

   (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

   Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Movant | $ | $ 1,158,936.89 |
| 2nd deed of trust: | Evoque Lending | $  107,100.00 | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | Pursuant to the Los Angeles County's website - | $161,462.37 | $ |
| Other: | Secured by multiple units. | $ | $ |

   **TOTAL DEBT:** $ 1,266,036.89  (Property taxes not included in the total debt)

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit 6_____ and consists of:

   (1) ☐ Preliminary title report.

   (2) ☒ Relevant portions of the Debtor's schedules.

   (3) ☐ Other (*specify*):

   g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
   I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 31,063.11 (before cost of sale)_____ and is 2.61____ % of the fair market value of the Property.

   h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
   By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ -76,036.89_____ .

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 8                              **F 4001-1.RFS.RP.MOTION**

i. ☒ Estimated costs of sale: $ _95,200.00_____    (estimate based upon _8_____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:


12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                          $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                          $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                  $[                              ]

TOTAL POSTPETITION DELINQUENCY:                  $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                          Page 9                          **F 4001-1.RFS.RP.MOTION**

13. ☑ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (*specify*):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☐ Multiple bankruptcy cases affecting the Property include:

        1. Case name: _____
           Chapter: _____ Case number: _____
           Date dismissed: _____ Date discharged: _____ Date filed: _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

        2. Case name: _____
           Chapter: _____ Case number: _____
           Date dismissed: _____ Date discharged: _____ Date filed: _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

        3. Case name: _____
           Chapter: _____ Case number: _____
           Date dismissed: _____ Date discharged: _____ Date filed: _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

1/14/26      Lisa L Johnson
*Date*            *Printed name*               *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*          Page 11          **F 4001-1.RFS.RP.MOTION**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR**

**RELIEF FROM AUTOMATIC STAY**

**I.**
**INTRODUCTION**

Marmar Bedford, LLC ("Debtor") commenced this Chapter 11 case on December 2, 2025, on the eve of Movant's December 3, 2025 foreclosure sale, for the sole purpose of invoking the automatic stay. Movant holds a first-priority deed of trust against the Property located at 1226 S. Bedford Street, Unit 502, Los Angeles, California, securing a loan with a current payoff balance of $1,158,936.89 that continues to accrue interest at $254.56 per day. The Debtor has failed to make contractually required payments due as of April 1, 2025, resulting in a reinstatement arrearage of $136,030.12. Secured Creditor has a ***negative*** cushion which is beyond insufficient to provide adequate protection. Moreover, the Property generates no rental income and lacks overall equity, rendering it unnecessary for an effective reorganization. Because cause exists under 11 U.S.C. § 362(d)(1), and the Debtor cannot satisfy § 362(d)(2), relief from the automatic stay is warranted.

**II.**
**ARGUMENT**

**A.    STANDARDS FOR RELIEF FROM STAY**

The automatic stay imposed by 11 U.S.C. § 362(a) is not absolute. While it serves as a fundamental protection for debtors, it was never intended to operate as a sword to the detriment of secured creditors whose interests are left unprotected. Section 362(d) expressly authorizes the Court to grant relief from the stay where cause exists, including the absence of adequate protection, or where the debtor lacks equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(1), (2).

**B.**    **RELIEF IS WARRANTED UNDER § 362(d)(1) FOR LACK OF ADEQUATE**

**PROTECTION AND NO POSSIBILITY OF SAME**

Relief from stay is appropriate under 11 U.S.C. § 362(d)(1), which authorizes the Court

to lift the stay "for cause," including the lack of adequate protection. Adequate protection is

commonly established through the existence of a sufficient equity cushion. Where such a cush-

ion is thin or nonexistent, cause for relief exists as a matter of law.

The Ninth Circuit has held that an equity cushion of approximately 20% generally con-

stitutes adequate protection. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1401 (9th Cir.

1984). Bankruptcy courts within this Circuit have consistently applied that benchmark. See

*Downey Sav. & Loan Ass'n v. Helionetics, Inc. (In re Helionetics, Inc.)*, 70 B.R. 433, 440

(Bankr. C.D. Cal. 1987) (finding a 20.4% equity cushion sufficient).

Here, no such cushion exists and Debtor is not making adequate protection payments.

Pursuant to a broker's price opinion, the Property is valued at $1,190,000.00. Movant's payoff

good through December 31, 2025 is $1,158,936.89, accruing interest at $254.56 per day, ren-

dering no equity cushion. Such lack of equity provides no protection against market volatility,

accruing interest, or additional costs and expenses. The risk of further erosion falls entirely on

Movant.

In addition, the Debtor has failed to maintain property taxes and insurance.  According

to the Los Angeles County Tax Assessor's website, the 2022-2023 property taxes are delinquent

in the amount of $66,524.42, and the 2023-2024 property taxes are delinquent in the amount of

$94,937.95, totaling $161,462.37 (*See* Exhibit 10). These are property taxes are secured by mul-

tiple units. Nevertheless, by allowing these critical obligations to lapse, the Debtor has

MEMORANDUM OF POINTS AND AUTHORITIES

materially increased the risk to Movant's collateral, thereby establishing additional cause for re-lief from the automatic stay.

Finally, the Debtor is unable to provide adequate protection through rental income. Alt-hough the Property is currently not leased, even a hypothetical tenancy would fail to provide adequate protection. The Property is listed for rent on Apartments.com seeking $5,895.00 per month (*See* Exhibit 11), an amount that is less than half of the required monthly payment of $13,544.02 and plainly insufficient to cover accruing interest, costs, or ongoing erosion of Mo-vant's collateral position. Courts have consistently held that speculative or inadequate income streams cannot constitute adequate protection where the secured debt continues to increase, and the creditor's position continues to deteriorate.

Under these circumstances, no form of adequate protection exists that could preserve Movant's rapidly declining secured interest while the automatic stay remains in place. Continu-ation of the stay merely delays enforcement of Movant's rights while compounding its losses. Accordingly, cause exists for relief from the automatic stay under § 362(d)(1).

## C. <u>RELIEF IS INDEPENDENTLY WARRANTED UNDER § 362(D)(2) FOR LACK OF EQUITY AND NOT NECESSARY FOR AN EFFECTIVE REORGANIZATION</u>

Section 362(d)(2) mandates relief from the automatic stay where the debtor lacks equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). The movant bears the burden of establishing the debtor's lack of equity, while the debtor bears the burden of demonstrating that the property is necessary to an effective reorgani-zation. 11 U.S.C. § 362(g); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76 (1988).

1. **The Debtor Has No Equity in the Property**

For purposes of § 362(d)(2)(A), the Ninth Circuit defines "equity" as the difference between the property's fair market value and the total amount of liens and encumbrances against it. *Stewart v. Gurley*, 745 F.2d 1194, 1196 (9th Cir. 1984). When the secured debt and anticipated costs of sale exceed the property's value, the debtor lacks equity as a matter of law. Here, the Property has a fair market value of $1,190,000.00. Against that value stands Movant's secured payoff in the amount of $1,158,936.89, which continues to accrue interest at $254.56 per day. The Property is further encumbered by a junior lien in the amount of $107,000.00, resulting in total secured debt of $1,265,936.89—already exceeding the Property's value.

In addition, any sale of the Property would necessarily incur costs conservatively estimated at eight percent (8%) of the Property's value, or approximately $95,200.00. When those unavoidable sale costs are considered, the Property is burdened by total obligations of approximately $1,361,136.89. Accordingly, the Property is underwater by approximately $171,136.89, conclusively establishing that the Debtor has no equity in the Property (and this does not include the property tax delinquency of approximately $161,462.37).

2. **The Property Is Not Necessary to an Effective Reorganization**

Because the Movant has established the absence of equity, the burden shifts to the Debtor to demonstrate that the Property is necessary to an effective reorganization. 11 U.S.C. § 362(g)(2). In a Chapter 11 case, this requires more than a speculative or aspirational reorganization strategy. The debtor must show "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers* at 376.

The Debtor cannot meet that burden here. The Property is substantially over-encumbered, continues to accrue interest daily, and generates no income that could support a

confirmable plan. Any proposed reorganization would necessarily depend on unsupported assumptions regarding refinancing, lien modification, or a sale yielding proceeds in excess of the Property's value and secured claims—assumptions that are foreclosed by the undisputed financial realities. Courts routinely grant relief under § 362(d)(2) where, as here, the debtor lacks equity and cannot demonstrate a feasible reorganization that meaningfully relies on the subject property. See, e.g., *In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 75–76 (9th Cir. BAP 1994).

Accordingly, because the Debtor has no equity in the Property and cannot establish that the Property is necessary to an effective reorganization, relief from the automatic stay is required under § 362(d)(2).

**D.**    **THE 14 DAY STAY PROVISIONS UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(A)(3) SHOULD BE ORDERED TO BE INAPPLICABLE TO ANY ORDER GRANTING THE MOTION**

Federal Rule of Bankruptcy Procedure 4001(a)(3), which dictate a mandatory 14-day stay on any order granting the Motion, should not be misconstrued as an opportunity for unwarranted delays in the effectiveness of such an order. There exists absolutely no justifiable cause for postponing the enactment of any order favoring the Motion.

**III.**
**CONCLUSION**

Each of the required grounds under 11 U.S.C 362(d) for relief from stay is squarely present here. Movant's interest in the Property is eroding daily, unprotected by any equity, payments, or income, while the Debtor continues to retain the Property without providing any form of adequate protection, or possibility of adequate protection. The Bankruptcy Code does not require a secured creditor to endure ongoing financial harm under these circumstances. Relief

from the automatic stay is both warranted and necessary to permit Movant to exercise its state

law remedies and prevent further diminution of its secured position.

Based on the foregoing reasons, Movant's Motion must be granted.

Dated: <u>01/09/2026</u>                              <u>/s/ Shannon Doyle</u>
                                            Shannon Doyle, Esq.
                                            Attorney for Movant
                                            U.S. Bank Trust Company, National
                                            Association, not in its individual capacity, but
                                            solely as trustee on behalf of PRPM 2024-
                                            NQM2 Trust, its successors and/or assigns

Exhibit 1

MIN: ████████████   Loan Number: ████████

# INTEREST-ONLY PERIOD FIXED RATE NOTE

February 14, 2024            LOS ANGELES            CALIFORNIA
[Date]                          [City]                   [State]

1226 S. Bedford Street Unit #502, Los Angeles, California 90035
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $930,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GREENBOX LOANS INC, A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first 120 months, and then will consist of principal and interest.

I will make my monthly payment on the 1st day of each month beginning on April 1 2024 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on March 1, 2054 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3250 WILSHIRE BLVD. #1900, LOS ANGELES, CALIFORNIA 90010
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 7,653.13 for the first 120 months of this Note, and thereafter will be in the amount of U.S. $ 8,897.82 . The Note Holder will notify me prior to the date of change in monthly payment.

## 4.   BORROWER'S RIGHT TO PREPAY      ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in

the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.    BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of         15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000 % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

_____ (Seal)
Libby F Markowitz                -Borrower

Universal Loan ID █████████████████████████
Loan Originator: Raymond Eshaghian, NMLSR ID █████████
Loan Originator Organization: Greenbox Loans, Inc., NMLSR ID ██████████

*[Sign Original Only]*

Loan Number: ████████████

# DEFAULT RATE ADDENDUM TO NOTE

Date: February 14, 2024

Borrower(s):  Libby F Markowitz

THIS DEFAULT RATE ADDENDUM TO NOTE (the "Addendum") is made this          14th day of February, 2024          , and is incorporated into and shall be deemed to amend and supplement  that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of  GREENBOX LOANS INC, A CALIFORNIA CORPORATION

("Lender") and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

**Default Rate.**  So long as (a) any monthly installment under this Note remains past due for thirty (30) days or more or (b) any other Event of Default has occurred and is continuing, interest under this Note shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at a rate (the **"Default Rate"**) equal to the lesser of TWELVE AND 000/1000                         percent (         12.000  %) per annum or the maximum interest rate which may be collected from Borrower under applicable law.  If the unpaid principal balance and all accrued interest are not paid in full on the Maturity Date, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate.  Borrower acknowledges that (a) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (b) during the time that any monthly installment under this Note is delinquent for thirty (30) days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (c) it is extremely difficult and impractical to determine those additional costs and expenses.  Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for thirty (30) days or more or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk.  Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan.  Borrower agrees that the Default Rate contemplated herein shall not be exclusive and Lender may be additionally compensated by late fees and other fees as specifically outlined in the Note.  During any period that the Default Rate is in effect the additional interest accruing over and above the rate stated in the Note shall be immediately due and payable in addition to the regularly scheduled principal and interest payments.

████████████████

Loan Number: █████████

MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

_____   2-15-24
Borrower  Libby P Markowitz          Date        _____
                                                  Borrower                           Date


_____               _____
Borrower                           Date          Borrower                           Date


_____               _____
Borrower                           Date          Borrower                           Date

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: ██████████

Date: February 14, 2024

Borrower(s): Libby F Markowitz

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this        14th        day of
February, 2024                    , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of GREENBOX
LOANS INC
                                                                                      , a Corporation
("Lender") and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section 4    of the Note is amended to read in its entirety as follows:

## 4   .  BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due.  A payment
of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my partial
Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest
rate increase.  If this Note provides for a variable interest rate or finance charge, and the interest
rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is
allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under
applicable law.
If within    THIRTY-SIX  (   36    ) months from the date the Security Instrument is
executed I make a full Prepayment or one or more partial Prepayments, I will pay a Prepayment
charge in an amount equal to five percent (5%) on the amount prepaid.

██████████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

_____     2-15-24
Borrower Libby F Markowitz                    Date

# ALLONGE TO PROMISSORY NOTE

For purposes of further endorsement of the following described Note, this Allonge is affixed and becomes a permanent part of said Note:

Loan Number: ███████

Note Date: **2/14/2024**

Loan Amount: **930,000.00**

Borrower Name: **LIBBY F MARKOWITZ**

Co-Borrower Name:

Lender: Greenbox Loans Inc., a California Corporation

Property Address: **1226 S. BEDFORD STREET UNIT 502
LOS ANGELES, CA 90035**

PAY TO THE ORDER OF

WITHOUT RECOURSE

By: _____
Alek Alevizos,
As Director Secondary Marketing of Greenbox Loans, Inc.

*1466* S. ████

# Loan Documents

**Loan Number:** █████
**Doc Type: Assignment**
**Mortgagor Name: LLC**
**Trade Name: Greenbox_Feb24**

Exhibit 2



**This page is part of your document - DO NOT DISCARD**



## 20240115952



**Pages:**
**0029**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**02/22/24 AT 08:00AM**

| | |
|---|---:|
| FEES: | 132.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 282.00 |



**L E A D S H E E T**



**202402220110077**

**00024232002**



**SEQ:**
**01**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**



E44231S

00203545-LD

Fidelity National Title Builder Services

Recording Requested By:
GREENBOX LOANS INC

And After Recording Return To:
GREENBOX LOANS INC C/O
DOCPROBE
1133 OCEAN AVENUE MAIL STOP CODE: DP913
LAKEWOOD, NEW JERSEY 08701
Loan Number: 2023120182

[Space Above This Line For Recording Data]

# DEED OF TRUST

**MIN:**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined under the caption
TRANSFER OF RIGHTS IN THE PROPERTY and in Sections 3, 4, 10, 11, 12, 16, 19, 24, and 25. Certain rules
regarding the usage of words used in this document are also provided in Section 17.

**Parties**

(A)  "Borrower" is  MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

currently residing at  712 N Beverly Dr, Beverly Hills, California 90210

Borrower is the trustor under this Security Instrument.
(B)  'Tender" is   GREENBOX LOANS INC

Lender is a CALIFORNIA CORPORATION                          organized and existing under the laws of
CALIFORNIA                           . Lender's address is 3250 WILSHIRE BLVD. #1900, LOS
ANGELES, CALIFORNIA 90010
The term "Lender" includes any successors and assigns of Lender.
(C)  'Trustee" is   Fidelity National Title

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)                    vSrDocMagic
Form 3005  07/2021

Trustee's address is  1260 Corona Pointe Court Suite 101, Corona, California 92879

The term "Trustee" includes any substitute/successor Trustee.

(D)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**Documents**

(E)    "Note" means the promissory note dated  February 14, 2024                      , and signed by each Borrower who is legally obligated for the debt under that promissory note, that is in either (i) paper form, using Borrower's written pen and ink signature, or (ii) electronic form, using Borrower's adopted Electronic Signature in accordance with the UETA or E-SIGN, as applicable. The Note evidences the legal obligation of each Borrower who signed the Note to pay Lender  NINE HUNDRED THIRTY THOUSAND AND 00/100
                                                 Dollars (U.S. $ 930,000.00                      ) plus interest. Each Borrower who signed the Note has promised to pay this debt in regular monthly payments and to pay the debt in full not later than March 1, 2054                      .

(F)    "Riders" means all Riders to this Security Instrument that are signed by Borrower. All such Riders are incorporated into and deemed to be a part of this Security Instrument. The following Riders are to be signed by Borrower [check box as applicable]:

| | |
|---|---|
| PI  Adjustable Rate Rider | [X]  Condominium Rider |
| [X]  1-4 Family Rider | ☐  Planned Unit Development Rider |
| Q  Second Home Rider | [X]  Other(s) [specify]: Prepayment Penalty Addendum |

(G)    "Security Instrument" means this document, which is dated  February 14, 2024                      , together with all Riders to this document.

**Additional Definitions**

**(H)**    "Applicable Law" means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association, or similar organization.

(J)    "Default" means: (i) the failure to pay any Periodic Payment or any other amount secured by this Security Instrument on the date it is due; (ii) a breach of any representation, warranty, covenant, obligation, or agreement in this Security Instrument; (iii) any materially false, misleading, or inaccurate information or statement to Lender provided by Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent, or failure to provide Lender with material information in connection with the Loan, as described in Section 8; or (iv) any action or proceeding described in Section 12(e).

(K)  "Electronic Fund Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone or other electronic device capable of communicating with such financial institution, wire transfers, and automated clearinghouse transfers.

(L)  "Electronic Signature" means an "Electronic Signature" as defined in the UETA or E-SIGN, as applicable.

(M)  "E-SIGN" means the Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 *et seq.*), as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

(N)  "Escrow Items" means: (i) taxes and assessments and other items that can attain priority over this Security Instrument as a lien or encumbrance on the Property; (ii) leasehold payments or ground rents on the Property, if any; (iii) premiums for any and all insurance required by Lender under Section 5; (iv) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 11; and (v) Community Association Dues, Fees, and Assessments if Lender requires that they be escrowed beginning at Loan closing or at any time during the Loan term.

(O)  "Loan" means the debt obligation evidenced by the Note, plus interest, any prepayment charges, costs, expenses, and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(P)  "Loan Servicer" means the entity that has the contractual right to receive Borrower's Periodic Payments and any other payments made by Borrower, and administers the Loan on behalf of Lender. Loan Servicer does not include a sub-servicer, which is an entity that may service the Loan on behalf of the Loan Servicer.

(Q)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(R)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or Default on, the Loan.

(S)  "Partial Payment" means any payment by Borrower, other than a voluntary prepayment permitted under the Note, which is less than a full outstanding Periodic Payment

(T)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3.

(U)  "Property" means the property described below under the heading "TRANSFER OF RIGHTS IN THE PROPERTY."

(V)  "Rents" means all amounts received by or due Borrower in connection with the lease, use, and/or occupancy of die Property by a party odier than Borrower.

(W)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter. When used in this Security Instrument, "RESPA" refers to all requirements and restrictions that would apply lo a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(X)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

(Y)  "UETA" means the Uniform Electronic Transactions Act, as enacted by die jurisdiction in which the Property is located, as it may be amended from time to time, or any applicable additional or successor legislation that governs tire same subject matter.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| **COUNTY** | of | **Los Angeles** | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF
A.P.N.: 4332-022-047  (NOP)

which currently has the address of        **1226 S. Bedford Street Unit #502**
                                                        [Street]

**Los Angeles**              , California        **90035**          ("Property Address");
[City]                                                      [Zip Code]

        TOGETHER WITH all the improvements now or subsequently erected on the property, including replacements and additions to the improvements on such property, all property rights, including, without limitation, all easements, appurtenances, Rents, issues and profits thereof, royalties, mineral rights, oil or gas rights or profits, water rights, miscellaneous proceeds, insurance proceeds, and fixtures now or subsequently a part of the property. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

        BORROWER REPRESENTS, WARRANTS, COVENANTS, AND AGREES that: (i) Borrower lawfully owns and possesses the Property conveyed in this Security Instrument in fee simple or lawfully has the right to use and occupy the Property under a leasehold estate; (ii) Borrower has the right to grant and convey the Property or Borrower's leasehold interest in the Property; and (iii) the Property is unencumbered, and not subject to any other ownership interest in the Property, except for encumbrances and ownership interests of record. Borrower warrants generally the title to the Property and covenants and agrees to defend the title to the Property against all claims and demands, subject to any encumbrances and ownership interests of record as of Loan closing.

        THIS SECURITY INSTRUMENT combines uniform covenants for national use with limited variations and non-uniform covenants that reflect specific California state requirements to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower will pay each Periodic Payment when due. Borrower will also pay any prepayment charges and late charges due under the Note, and any other amounts due under this Security Instrument. Payments due under the Note and this Security Instrument must be made in U.S. currency. If any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (d) Electronic Fund Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at sucli oilier location as may be designated by Lender in accordance with the notice provisions in Section 16. Lender may accept or return any Partial Payments in its sole discretion pursuant to Section 2.

Any offset or claim that Borrower may have now or in the future against Lender will not relieve Borrower from making the full amount of all payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  Acceptance and Application of Payments or Proceeds.

(a)  Acceptance and Application of Partial Payments. Lender may accept and either apply or hold in suspense Partial Payments in its sole discretion in accordance with this Section 2. Lender is not obligated to accept any Partial Payments or to apply any Partial Payments at the time such payments are accepted, and also is not obligated to pay interest on such unapplied funds. Lender may hold such unapplied funds until Borrower makes payment sufficient to cover a full Periodic Payment, at which time the amount of the full Periodic Payment will be applied to the Loan. If Borrower does not make such a payment within a reasonable period of time, Lender will either apply such funds in accordance with this Section 2 or return them to Borrower. If not applied earlier, Partial Payments will be credited against the total amount due under the Loan in calculating the amount due in connection with any foreclosure proceeding, payoff request, loan modification, or reinstatement. Lender may accept any payment insufficient to bring the Loan current without waiver of any rights under this Security Instrument or prejudice to its rights to refuse such payments in the future.

(b)  Order of Application of Partial Payments and Periodic Payments. Except as otherwise described in this Section 2, if Lender applies a payment, such payment will be applied to each Periodic Payment in the order in which it became due, beginning with the oldest outstanding Periodic Payment, as follows: first to interest arid then to principal due under the Note, and finally to Escrow Items. If all outstanding Periodic Payments then due are paid in full, any payment amounts remaining may be applied to late charges and to any amounts then due under this Security Instrument. If all sums then due under the Note and this Security Instrument are paid in full, any remaining payment amount may be applied, in Lender's sole discretion, to a future Periodic Payment or to reduce the principal balance of the Note.

If Lender receives a payment from Borrower in the amount of one or more Periodic Payments and the amount of any late charge due for a delinquent Periodic Payment, the payment may be applied to the delinquent payment and the late charge.

When applying payments, Lender will apply such payments in accordance with Applicable Law.

(c)  Voluntary Prepayments. Voluntary prepayments will be applied as described in the Note.

(d)  No Change to Payment Schedule. Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  Funds for Escrow Items.

(a)  Escrow Requirement; Escrow Items. Borrower must pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum of money to provide for payment of amounts due for all Escrow

Items (the "Funds"). The amount of the Funds required to be paid each month may change during the term of the Loan. Borrower must promptly furnish to Lender all notices or invoices of amounts to be paid under this Section 3.

(b) Payment of Funds; Waiver. Borrower must pay Lender the Funds for Escrow Items unless Lender waives this obligation in writing, or unless prohibited by Applicable Law. Lender may waive this obligation for any Escrow Item at any time. In the event of such waiver or prohibition, Borrower must pay directly, when and where payable, the amounts due for any Escrow Items and Lender may require Borrower to provide proof of direct payment of those items within such time period as Lender may require. Borrower's obligation to make such timely payments and to provide proof of payment is deemed to be a covenant and agreement of Borrower under this Security Instrument. If Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay timely the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to pay such amount and Borrower will be obligated to repay to Lender any such amount in accordance with Section 9.

Unless prohibited by Applicable Law, Lender may withdraw the waiver as to any or all Escrow Items at any time by giving a notice in accordance with Section 16; upon such withdrawal, Borrower must pay to Lender all Funds for such Escrow Items, and in such amounts, that arc then required under this Section 3.

(c) Amount of Funds; Application of Funds. Lender may, at any time, collect and hold Funds in an amount up to, but not in excess of, the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due in accordance with Applicable Law.

The Funds will be held in an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits arc so insured) or in any Federal Home Loan Bank. Lender will apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender may not charge Borrower for: (i) holding and applying the Funds; (ii) annually analyzing the escrow account; or (iii) verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on the Funds, Lender will not be required to pay Borrower any interest or earnings on the Funds. Lender will give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

(d) Surplus; Shortage and Deficiency of Funds. In accordance with RESPA, if there is a surplus of Funds held in escrow, Lender will account to Borrower for such surplus. If Borrower's Periodic Payment is delinquent by more than 30 days, Lender may retain the surplus in the escrow account for the payment of file Escrow Items. If there is a shortage or deficiency of Funds held in escrow, Lender will notify Borrower and Borrower will pay to Lender the amount necessary to make up the shortage or deficiency in accordance with RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender will promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower must pay (a) all taxes, assessments, charges, fines, and impositions attributable to the Property which have priority or may attain priority over this Security Instrument, (b) leasehold payments or ground rents on the Property, if any, and (c) Community Association Dues, Fees, and Assessments, if any. If any of these items arc Escrow Items, Borrower will pay them in the manner provided in Section 3.

Borrower must promptly discharge any lien that has priority or may attain priority over this Security Instrument unless Borrower: (aa) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing under such agreement; (bb) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which Lender determines, in its sole discretion, operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (cc) secures from the holder of the lien an agreement satisfactory to Lender that subordinates the lien to this Security Instrument (collectively, the "Required Actions"). If Lender determines that any pari of the Property is subject to a lien that has priority or may attain priority over this Security Instrument and Borrower has not taken any of the Required Actions in regard to such lien, Lender may give Borrower a notice identifying the lieu. Within 10 days after the date on which that notice is given, Borrower must satisfy the lien or take one or more of the Required Actions.

**5.**   Property Insurance.

(a)   Insurance Requirement; Coverages. Borrower must keep the improvements now existing or subsequently erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes, winds, and floods, for which Lender requires insurance. Borrower must maintain the types of insurance Lender requires in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan, and may exceed any minimum coverage required by Applicable Law. Borrower may choose the insurance carrier providing the insurance, subject to Lender's right to disapprove Borrower's choice, which right will not be exercised unreasonably.

(b)   Failure to Maintain Insurance. If Lender has a reasonable basis to believe that Borrower has failed to maintain any of the required insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and at Borrower's expense. Unless required by Applicable Law, Lender is under no obligation to advance premiums for, or to seek to reinstate, any prior lapsed coverage obtained by Borrower. Lender is under no obligation to purchase any particular type or amount of coverage and may select the provider of such insurance in its sole discretion. Before purchasing such coverage, Lender will notify Borrower if required to do so under Applicable Law. Any such coverage will insure Lender, but might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect, but not exceeding the coverage required under Section 5(a). Borrower acknowledges that the cost of the insurance coverage so obtained may significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender for costs associated with reinstating Borrower's insurance policy or with placing new insurance under this Section 5 will become additional debt of Borrower secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(c)   Insurance Policies. All insurance policies required by Lender and renewals of such policies: (i) will be subject to Lender's right to disapprove such policies; (ii) must include a standard mortgage clause; and (iii) must name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender will have the right to hold the policies and renewal certificates. If Lender requires, Borrower will promptly give to Lender proof of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy must include a standard mortgage clause and must name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

(d)   Proof of Loss; Application of Proceeds. In the event of loss, Borrower must give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Any insurance proceeds, whether or not the underlying insurance was required by Lender, will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and determines that Lender's security will not be lessened by such restoration or repair.

If the Property is to be repaired or restored, Lender will disburse from the insurance proceeds any initial amounts that are necessary to begin the repair or restoration, subject to any restrictions applicable to Lender. During the subsequent repair and restoration period, Lender will have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Lender will not be required

to pay Borrower any interest or earnings on such insurance proceeds unless Lender and Borrower agree in writing or Applicable Law requires otherwise. Fees for public adjusters, or other third parties, retained by Borrower will not be paid out of the insurance proceeds and will be the sole obligation of Borrower.

If, in accordance with Applicable Law, Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the insurance proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

(e)  Insurance Settlements; Assignment of Proceeds. If Borrower abandons the Property, Lender may file, negotiate, and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 26 or otherwise, Borrower is unconditionally assigning to Lender (i) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note and this Security Instrument, and (ii) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, to the extent that such rights are applicable to the coverage of die Property. If Lender files, negotiates, or settles a claim, Borrower agrees that any insurance proceeds may be made payable directly to Lender without the need to include Borrower as an additional loss payee. Lender may use the insurance proceeds either to repair or restore the Property (as provided in Section 5(d)) or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due, in accordance with Applicable Law.

6.  Occupancy. Borrower must occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and must continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent will not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

7.  Preservation, Maintenance, and Protection of the Property; Inspections. Borrower will not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower must maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless Lender determines pursuant to Section 5 that repair or restoration is not economically feasible, Borrower will promptly repair the Property if damaged to avoid further deterioration or damage.

If insurance or condemnation proceeds are paid to Lender in connection with damage to, or the taking of, the Property, Borrower will be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, die terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. If the insurance or condemnation proceeds arc not sufficient to repair or restore the Property, Borrower remains obligated to complete such repair or restoration.

Lender may make reasonable entries upon and inspections of the Property. If Lender has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower will be in Default if, during the Loan application process, Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, overstating Borrower's income or assets, understating or failing to provide documentation of Borrower's debt obligations and liabilities, and misrepresenting Borrower's occupancy or intended occupancy of the Property as Borrower's principal residence.



9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**

(a) **Protection of Lender's Interest.** If: (i) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (ii) there is a legal proceeding or government order that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that has priority or may attain priority over this Security Instrument, or to enforce laws or regulations); or (iii) Lender reasonably believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and/or rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (I) paying any sums secured by a lien that has priority or may attain priority over this Security Instrument; (II) appearing in court; and (III) paying: (A) reasonable attorneys' fees and costs; (B) property inspection and valuation fees; and (C) other fees incurred for the purpose of protecting Lender's interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, exterior and interior inspections of the Property, entering the Property to make repairs, changing locks, replacing or boarding up doors and windows, draining water from pipes, eliminating building or other code violations or dangerous conditions, and having utilities turned on or off. Although Lender may take action under this Section 9, Lender is not required to do so and is not under any duty or obligation to do so. Lender will not be liable for not taking any or all actions authorized under this Section 9.

(b) **Avoiding Foreclosure; Mitigating Losses.** If Borrower is in Default, Lender may work with Borrower to avoid foreclosure and/or mitigate Lender's potential losses, but is not obligated to do so unless required by Applicable Law. Lender may take reasonable actions to evaluate Borrower for available alternatives to foreclosure, including, but not limited to, obtaining credit reports, title reports, title insurance, property valuations, subordination agreements, and third-party approvals. Borrower authorizes and consents to these actions. Any costs associated with such loss mitigation activities may be paid by Lender and recovered from Borrower as described below in Section 9(c), unless prohibited by Applicable Law.

(c) **Additional Amounts Secured.** Any amounts disbursed by Lender under this Section 9 will become additional debt of Borrower secured by this Security Instrument. These amounts may bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(d) **Leasehold Terms.** If this Security Instrument is on a leasehold, Borrower will comply with all the provisions of the lease. Borrower will not surrender the leasehold estate and interests conveyed, or terminate or cancel the ground lease. Borrower will not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title will not merge unless Lender agrees to the merger in writing.

10. **Assignment of Rents.**

(a) **Assignment of Rents.** If the Property is leased to, used by, or occupied by a third party ("Tenant"), Borrower is unconditionally assigning and transferring to Lender any Rents, regardless of to whom the Rents are payable. This assignment of Rents constitutes a perfected, absolute and present assignment. Lender grants to Borrower a license to collect, but not prior to accrual, and retain the Rents; however, upon the occurrence and during the continuance of an event of Default, Borrower's license to collect and retain the Rents will immediately terminate. Under this license, Borrower will receive the Rents until (i) Lender has given Borrower notice of Default pursuant to Section 26, and (ii) Lender has given notice to the Tenant that the Rents are to be paid to Lender. This Section 10 constitutes an absolute assignment and not an assignment for additional security only.

(b) **Notice of Default.** If Lender gives notice of Default to Borrower, all of the following will apply, unless prohibited by Applicable Law: (i) all Rents received by Borrower must be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender will be entitled to collect and receive all of the Rents; (iii) Borrower agrees to instruct each Tenant that Tenant is to pay all Rents due and

unpaid to Lender upon Lender's written demand to the Tenant; (iv) Borrower will ensure that each Tenant pays all Rents due to Lender and will take whatever action is necessary to collect such Rents if not paid to Lender; (v) unless Applicable Law provides otherwise, all Rents collected by Lender will be applied first to the costs of talcing control of and managing the Property and collecting the Rents, including, but not limited to, reasonable attorneys' fees and costs, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to any other sums secured by this Security Instrument; (vi) Lender, or any judicially appointed receiver, will be liable to account for only those Rents actually received; and (vii) Lender will be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

(c)  Funds Paid by Lender. If the Rents are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any ftinds paid by Lender for such purposes will become indebtedness of Borrower to Lender secured by this Security Instrument pursuant to Section 9.

(d)  Limitation on Collection of Rents. Borrower may not collect any of the Rents more than one month in advance of the time when the Rents become due, except for security or similar deposits.

(e)  No Other Assignment of Rents. Borrower represents, warrants, covenants, and agrees that Borrower has not signed any prior assignment of the Rents, will not make any further assignment of the Rents, and has not performed, and will not perform, any act tliat could prevent Lender from exercising its rights under this Security Instrument.

(f)  Control and Maintenance of the Property. Unless required by Applicable Law, Lender, or a receiver appointed under Applicable Law, is not obligated to enLer upon, take control of, or maintain the Property before or after giving notice of Default to Borrower. However, Lender, or a receiver appointed under Applicable Law, may do so at any time when Borrower is in Default, subject to Applicable Law.

(g)  Additional Provisions. Any application of the Rents will not cure or waive any Default or invalidate any other right or remedy of Lender. This Section 10 does not relieve Borrower of Borrower's obligations under Section 6.

This Section 10 will terminate when all the sums secured by this Security Instrument are paid in full.

11.  Mortgage Insurance.

(a)  Payment of Premiums; Substitution of Policy; Loss Reserve; Protection of Lender. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower will pay the premiums required to maintain the Mortgage Insurance in effect. If Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, and (i) the Mortgage Insurance coverage required by Lender ceases for any reason to be available from the mortgage insurer that previously provided such insurance, or (ii) Lender determines in its sole discretion that such mortgage insurer is no longer eligible to provide the Mortgage Insurance coverage required by Lender, Borrower will pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Borrower will continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use, and retain these payments as a non-refundable loss reserve in lieu of Mortgage insurance. Such loss reserve will be non-refundable, even when the Loan is paid in full, and Lender will not be required to pay Borrower any interest or earnings on such loss reserve, unless required by Applicable Law.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower will pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's

requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 11 affects Borrower's obligation Lo pay interest at the Note rate.

(b)  Mortgage Insurance Agreements. Mortgage Insurance reimburses Lender for certain losses Lender may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy or coverage.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. Any such agreements will not: (i) affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan; (ii) increase the amount Borrower will owe for Mortgage Insurance; (iii) entitle Borrower lo any refund; or (iv) affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 (12 U.S.C. § 4901 *et seq.*), as it may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter ("HPA"). These rights under the HPA may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

12.  Assignment and Application of Miscellaneous Proceeds; Forfeiture.

(a)  Assignment of Miscellaneous Proceeds. Borrower is unconditionally assigning the right to receive all Miscellaneous Proceeds to Lender and agrees that such amounts will be paid to Lender.

(b)  Application of Miscellaneous Proceeds upon Damage to Property. If the Property is damaged, any Miscellaneous Proceeds will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and Lender's security will not be lessened by such restoration or repair. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, unless prohibited by Applicable Law, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

(c)  Application of Miscellaneous Proceeds upon Condemnation, Destruction, or Loss in Value of the Property. In the event of a total taking, destruction, or loss in value of the Property, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, unless prohibited by Applicable Law, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property (each, a "Partial Devaluation") where the fair market value of the Property immediately before the Partial Devaluation is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the Partial Devaluation, a percentage of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, unless prohibited by Applicable Law, or unless Borrower and Lender otherwise agree in writing. The amount of the Miscellaneous Proceeds that will be so applied is determined by multiplying the total amount of the Miscellaneous Proceeds by a percentage calculated by taking (i) the total amount of the sums secured immediately before the Partial Devaluation, and dividing it by (ii) the fair market value of the Property immediately before the Partial Devaluation. Any balance of the Miscellaneous Proceeds will be paid to Borrower.

In the event of a Partial Devaluation where the fair market value of the Property immediately before the Partial Devaluation is less than the amount of the sums secured immediately before the Partial Devaluation, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not the sums are then due, unless Borrower and Lender otherwise agree in writing.

(d)  Settlement of Claims. Lender is authorized to collect and apply the Miscellaneous Proceeds either to the sums secured by this Security Instrument, whether or not then due, or to restoration or repair of the Property, if Borrower (i) abandons the Property, or (ii) fails to respond to Lender within 30 days after the date Lender notifies Borrower that the Opposing Party (as defined in the next sentence) offers to settle a claim for damages. "Opposing Party" means the third party that owes Borrower the Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to the Miscellaneous Proceeds.

(e)  Proceeding Affecting Lender's Interest in the Property. Borrower will be in Default if any action or proceeding begins, whether civil or criminal, that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument, unless prohibited by Applicable Law. Borrower can cure such a Default and, if acceleration has occurred, reinstate as provided in Section 20, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in die Property or rights under this Security Instrument Borrower is unconditionally assigning to Lender the proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Properly, which proceeds will be paid to Lender. All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order that Partial Payments are applied in Section 2(b).

13.  Borrower Not Released; Forbearance by Lender Not a Waiver. Borrower or arty Successor in Interest of Borrower will not be released from liability under this Security Instrument if Lender extends the time for payment or modifies the amortization of the sums secured by this Security Instrument. Lender will not be required to commence proceedings against any Successor in Interest of Borrower, or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument, by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities, or Successors in Interest of Borrower or in amounts less than the amount then due, will not be a waiver of, or preclude the exercise of, any right or remedy by Lender.

14.  Joint and Several Liability; Signatories; Successors and Assigns Bound. Borrower's obligations and liability under this Security Instrument will be joint and several. However, any Borrower who signs this Security Instrument but does not sign the Note: (a) signs this Security Instrument to mortgage, grant, and convey such Borrower's interest in the Property under the terms of this Security Instrument; (b) signs tills Security Instrument to waive any applicable inchoate rights and any available homestead exemptions, unless prohibited by Applicable Law; (c) signs this Security Instrument to assign any Miscellaneous Proceeds, Rents, or other earnings from the Property to Lender; (d) is not personally obligated to pay the sums due under the Note or this Security Instrument; and (e) agrees that Lender and any other Borrower can agree to extend, modify, forbear, or make any accommodations with

regard to the terms of the Note or this Security Instrument without such Borrower's consent and without affecting such Borrower's obligations under this Security Instrument.

Subject to the provisions of Section 19, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, will obtain all of Borrower's rights, obligations, and benefits under this Security Instrument. Borrower will not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.

15. **Loan Charges.**

(a)  Tax and Flood Determination Fees. Lender may require Borrower to pay (i) a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan, and (ii) either (A) a one-time charge for flood zone determination, certification, and tracking services, or (B) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur that reasonably might affect such determination or certification. Borrower will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency, or any successor agency, at any time during the Loan term, in connection with any flood zone determinations.

(b)  Default Charges. If permitted under Applicable Law, Lender may charge Borrower fees for services performed in connection with Borrower's Default to protect Lender's interest in the Property and rights under this Security Instrument, including: (i) reasonable attorneys' fees and costs; (ii) property inspection, valuation, mediation, and loss mitigation fees; and (iii) other related fees.

(c)  Permissibility of Fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

(d)  Savings Clause. If Applicable Law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

16.  Notices; Borrower's Physical Address. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.

(a)  Notices to Borrower. Unless Applicable Law requires a different method, any written notice to Borrower in connection with this Security Instrument will be deemed to have been given to Borrower when (i) mailed by first class mail, or (ii) actually delivered to Borrower's Notice Address (as defined in Section 16(c) below) if sent by means other than first class mail or Electronic Communication (as defined in Section 16(b) below). Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. If any notice to Borrower required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(b)  Electronic Notice to Borrower. Unless another delivery method is required by Applicable Law, Lender may provide notice to Borrower by e-mail or other electronic communication ("Electronic Communication") if: (i) agreed to by Lender and Borrower in writing; (ii) Borrower has provided Lender with Borrower's e-mail or other electronic address ("Electronic Address"); (iii) Lender provides Borrower with the option to receive notices by first class mail or by other non-Electronic Communication instead of by Electronic Communication; and (iv) Lender otherwise complies with Applicable Law. Any notice to Borrower sent by Electronic Communication in connection with this Security Instrument will be deemed to have been given to Borrower when sent unless Lender becomes aware that such notice is not delivered. If Lender becomes aware that any notice sent by Electronic Communication is not

delivered, Lender will resend such communication to Borrower by first class mail or by other non-Electronic Communication. Borrower may withdraw the agreement to receive Electronic Communications from Lender at any time by providing written notice to Lender of Borrower's withdrawal of such agreement

(c)  Borrower's Notice Address. The address to which Lender will send Borrower notice ("Notice Address") will be die Property Address unless Borrower has designated a different address by written notice to Lender. If Lender and Borrower have agreed that notice may be given by Electronic Communication, then Borrower may designate an Electronic Address as Notice Address. Borrower will promptly notify Lender of Borrower's change of Notice Address, including any changes to Borrower's Electronic Address if designated as Notice Address. If Lender specifies a procedure for reporting Borrower's change of Notice Address, then Borrower will report a change of Notice Address only through that specified procedure.

(d)  Notices to Lender. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated in this Security Instrument unless Lender has designated another address (including an Electronic Address) by notice to Borrower. Any notice in connection with this Security Instrument will be deemed to have been given to Lender only when actually received by Lender at Lender's designated address (which may include an Electronic Address). If any notice to Lender required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(e)  Borrower's Physical Address. In addition to the designated Notice Address, Borrower will provide Lender with the address where Borrower physically resides, if different from the Property Address, and notify Lender whenever Ibis address changes.

17.  Governing Law; Severability; Rules of Construction. This Security Instrument is governed by federal law and the law of the State of California. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. If any provision of this Security Instrument or the Note conflicts with Applicable Law (i) such conflict will not affect other provisions of this Security Instrument or the Note that can be given effect without the conflicting provision, and (ii) such conflicting provision, to the extent possible, will be considered modified to comply with Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence should not be construed as a prohibition against agreement by contract. Any action required under this Security Instrument to be made in accordance with Applicable Law is to be made in accordance with the Applicable Law in effect at the time the action is undertaken.

As used in this Security Instrument: (a) words in the singular will mean and include the plural and vice versa; (b) the word "may" gives sole discretion without any obligation to take any action; (c) any reference to "Section" in this document refers to Sections contained in this Security Instrument unless otherwise noted; and (d) the headings and captions are inserted for convenience of reference and do not define, limit, or describe the scope or intent of this Security Instrument or any particular Section, paragraph, or provision.

18.  Borrower's Copy. One Borrower will be given one copy of the Note and of this Security Instrument.

19.  Transfer of the Property or a Beneficial Interest in Borrower. For purposes of this Section 19 only, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further

notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.

20. **Borrower's Right to Reinstate the Loan after Acceleration.** If Borrower meets certain conditions, Borrower will have the right to reinstate the Loan and have enforcement of this Security Instrument discontinued at any time up to the later of (a) five days before any foreclosure sale of the Property, or (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate. This right to reinstate will not apply in the case of acceleration under Section 19.

To reinstate the Loan, Borrower must satisfy all of the following conditions: (aa) pay Lender all sums that then would be due under this Security Instrument and the Note as if no acceleration had occurred; (bb) cure any Default of any other covenants or agreements under this Security Instrument or the Note; (cc) pay all expenses incurred in enforcing this Security Instrument or the Note, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument or the Note; and (dd) take such action as Lender may reasonably require to assure that Lender's interest in the Property and/or rights under this Security Instrument or the Note, and Borrower's obligation to pay the sums secured by this Security Instrument or the Note, will continue unchanged.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (aaa) cash; (bbb) money order; (ccc) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (ddd) Electronic Fund Transfer. Upon Borrower's reinstatement of the Loan, this Security Instrument and obligations secured by this Security Instrument will remain fully effective as if no acceleration had occurred.

21. **Sale of Note.** The Note or a partial interest in the Note, together with this Security Instrument, may be sold or otherwise transferred one or more times. Upon such a sale or other transfer, all of Lender's rights and obligations under this Security Instrument will convey to Lender's successors and assigns.

22. **Loan Servicer.** Lender may take any action permitted under this Security Instrument through the Loan Servicer or another authorized representative, such as a sub-servicer. Borrower understands that the Loan Servicer or other authorized representative of Lender has the right and authority to take any such action.

The Loan Servicer may change one or more times during the term of the Note. The Loan Servicer may or may not be the holder of the Note. The Loan Servicer has the right and authority to: (a) collect Periodic Payments and any other amounts due under the Note and this Security Instrument; (b) perform any other mortgage loan servicing obligations; and (c) exercise any rights under the Note, this Security Instrument, and Applicable Law on behalf of Lender. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing.

23. **Notice of Grievance.** Until Borrower or Lender has notified the other party (in accordance with Section 16) of an alleged breach and afforded the other party a reasonable period after the giving of such notice to take corrective action, neither Borrower nor Lender may commence, join, or be joined to any judicial action (either as an individual litigant or a member of a class) that (a) arises from the other party's actions pursuant to this Security Instrument or the Note, or (b) alleges that the other party has breached any provision of this Security Instrument or the Note. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 23. The notice of Default given to Borrower pursuant to Section 26(a) and the notice of acceleration given to Borrower pursuant to Section 19 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 23.

24. **Hazardous Substances.**

(a) Definitions. As used in this Section 24: (i) "Environmental Law" means any Applicable Laws where the Property is located that relate to health, safety, or environmental protection; (ii) "Hazardous Substances" include (A)

those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and (B) the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, corrosive materials or agents, and radioactive materials; (iii) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (iv) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

(b)  Restrictions on Use of Hazardous Substances. Borrower will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower will not do, nor allow anyone else to do, anything affecting the Property that (i) violates Environmental Law; (ii) creates an Environmental Condition; or (iii) due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects or could adversely affect the value of the Property. The preceding two sentences will not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

(c)  Notices; Remedial Actions. Borrower will promptly give Lender written notice of: (i) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (ii) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (iii) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower will promptly take all necessary remedial actions in accordance with Environmental Law. Nothing in this Security Instrument will create any obligation on Lender for an Environmental Cleanup.

**25.  Electronic Note Signed with Borrower's Electronic Signature.** If the Note evidencing the debt for this Loan is electronic, Borrower acknowledges and represents to Lender that Borrower: (a) expressly consented and intended to sign the electronic Note using an Electronic Signature adopted by Borrower ("Borrower's Electronic Signature") instead of signing a paper Note with Borrower's written pen and ink signature; (b) did not withdraw Borrower's express consent to sign the electronic Note using Borrower's Electronic Signature; (c) understood that by signing the electronic Note using Borrower's Electronic Signature, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms; and (d) signed the electronic Note with Borrower's Electronic Signature with the intent and understanding that by doing so, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

26.  Acceleration; Remedies.

(a)  Notice of Default. Lender will give a notice of Default to Borrower prior to acceleration following Borrower's Default, except that such notice of Default will not be sent when Lender exercises its right under Section 19 unless Applicable Law provides otherwise. The notice will specify, in addition to any other information required by Applicable Law: (i) the Default; (ii) the action required to cure the Default; (iii) a date, not less than 30 days (or as otherwise specified by Applicable Law) from the date the notice is given to Borrower, by which the Default must be cured; (iv) that failure to cure the Default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property; (v) Borrower's right to reinstate after acceleration; and (vi) Borrower's right to bring a court action to deny the existence of a Default or to assert any other defense of Borrower to acceleration and sale.

(b)  Acceleration; Power of Sale; Expenses. If the Default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand mid may invoke the power of sale and any other remedies permitted by Applicable Law. Lender will be

entitled to collect all expenses incurred in pursuing the remedies provided in this Section 26, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument.

(c) Notice of Sale; Sale of Property. If Lender invokes the power of sale, Lender will execute or cause Trustee to execute a written notice of the occurrence of an event of Default and of Lender's election to cause the Property to be sold. Trustee will cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee will mail copies of the notice as prescribed by Applicable Law to Borrower and to the other required recipients. Trustee will give public notice of sale to the persons and in the manner prescribed by Applicable Law. At a time permitted by, and in accordance with Applicable Law, Trustee, without further demand on Borrower, will sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Unless prohibited by Applicable Law, Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

(d) Trustee's Deed; Proceeds of Sale. Trustee will deliver to the purchaser a Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed will be prima fade or conclusive evidence of the truth of the statements made in that deed, in accordance with Section 2924(c) of the Civil Code of California. Trustee will apply the proceeds of the sale in the following order: (i) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (ii) to all sums secured by this Security Instrument; and (iii) any excess to the person or persons legally entitled to it.

27. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender will request Trustee to reconvey the Property and will surrender this Security Instrument and all Notes evidencing the debt secured by this Security Instrument to Trustee. Upon such request, Trustee will reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

28. Substitute Trustee. Lender may, from time to time appoint a successor trustee to any Trustee appointed under this Security Instrument by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument will contain the name of the original Lender, Trustee, and Borrower, the instrument number or the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee will succeed to all the rights, title, power, and duties conferred upon Trustee in this Security Instrument and by Applicable Law. This procedure for substitution of trustee will govern to the exclusion of all other provisions for substitution.

29. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider signed by Borrower and recorded with it

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower's Notice Address.

MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

| | |
|---|---|
| _____ 2-15-24 | _____ 2/15/24 |
| Borrower LibJoy F Markowitz       Date | MAWTIN MARKiOWITZ |

_____                 _____
Witness                                  Witness

———————— [Space Below This Line For Acknowledgment] ————————

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __**CALIFORNIA**__ )

County of _Los Angeles_ )

On _FEBRUARY 15, 2024_ before me, _LARRY A GEORGE, NANAV PELEE®_
       Date                                    Here Insert Name and Title of the Notarizing Officer

personally appeared _Libby **F Markowitz**_ _& MARVIN MARKOWITZ_

_____

_____ ,
                                        Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



**LARRY P. GEORGE**
Notary Public - California
Los Angeles County
Commission # 2395607
My Comm. Expires Mar 26, 2026

Signature of Notary Public

     Notary Seal

# TRUE COPY CERTIFICATION
**(Government Code 27361.7)**

**I certify under penalty of perjury that this material is a true copy of the original material contained in this document.**

**MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

**LIBBY F MARKOWITZ          MARVIN MARKOWITZ**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

State of      CALIFORNIA

County of    LOS ANGELES

On  FEBRUARY 15, 2024  before me  LARRY P. GEORGE ____, Notary Public personally appeared   LIBBY F MARKOWITZ + MARVIN MARKOWITZ   who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

Notary Seal

EXECUTED IN THE CITY OF CORONA, CA

Date: _____          By: _____

Veronica Elizalde - SIMPLIFILE

# EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED  LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

AN UNDIVIDED ONE-TWENTIETH (1/20TH) INTEREST IN THE COMMON AREA OF LOT 1 OF TRACT NO. 74076, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 1438, PAGES 30 THROUGH 32, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND AS SHOWN AND DEFINED IN THE CONDOMINIUM PLAN RECORDED JANUARY 13, 2023 AS INSTRUMENT NO. 20230028373, OF OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 2:

UNIT NO. 502 AS SHOWN AND DEFINED IN THE CONDOMINIUM PLAN ABOVE MENTIONED.

APN:

# PREPAYMENT ADDENDUM TO DEED OF TRUST

Loan Number: ▮▮▮▮▮▮▮▮▮

Date: February 14, 2024

Borrower(s): Libby F Markowitz

THIS PREPAYMENT ADDENDUM TO DEED OF TRUST (the "Addendum") is made this    14th
day of    February,  2024          , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of  GREEN BOX
 LOANS  INC

, a Corporation
("Lender") and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section 4    of the Note is amended to read in its entirety as follows:

**4    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due.  A payment
of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note
Plolder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my partial
Prepayment  However, any reduction due to my partial Prepayment may be offset by an interest
rate increase.  If this Note provides for a variable interest rate or finance charge, and the interest
rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is
allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under
applicable law.
If within    THIRTY-SIX  (  36     ) months from the date the Security Instrument is
executed I make a full Prepayment or one or more partial Prepayments, I will pay a Prepayment
charge in an amount equal to five percent (5%) on the amount prepaid.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

MARMAR BEDFORD LLC, A CALIFORNIA LIMITED *UKSU tm* COMPANY

_____   2-15-24      _____   2/15/24
Borrower Libby F Markowitz        Date          MARVIN MARKOWITZ

MIN: ███████████          Loan Number: ████████

# 1-4 FAMILY RIDER

THIS 1-4 FAMILY RIDER is made this  14th  day of  February, 2024                    ,
and is incorporated into and amends and supplements the Mortgage, Mortgage Deed, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to  GREENBOX LOANS INC, A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

1226 S. Bedford Street Unit #502, Los Angeles, California 90035

[Property Address]

1-4 FAMILY COVENANTS. In addition to the representations, warranties, covenants, and
agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT.** In addition to the Property described in the Security Instrument, the
following items now or later attached to the Property, to the extent they are fixtures, are
added to the Property description, and will also constitute the Property covered by the
Security Instrument: building materials, appliances and goods of every nature whatsoever
now or later located in, on, or used, or intended to be used in connection with the Property,
including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus,
security and access control apparatus, plumbing, bath tubs, water heaters, water closets,
sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm
windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors,
cabinets, paneling, and attached floor coverings, all of which, including replacements and
additions, will be deemed to be and remain a part of the Property covered by the Security
Instrument. All of the foregoing together with the Property described in the Security
Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred
to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.  USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower will
not seek, agree to, or make a change in the use of the Property or its zoning classification,
unless Lender has agreed in writing to the change. Borrower will comply with all laws,
ordinances, regulations, and requirements of any governmental body applicable to the
Property.

**C.  BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise
agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**D.  ASSIGNMENT OF LEASES.** Upon Lender's request after default,
Borrower will assign to Lender all leases of the Property and all security deposits made in
connection with leases of the Property. Upon the assignment, Lender will have the right to
modify, extend, or terminate the existing leases and to execute new leases, in Lender's sole

discretion. As used in this paragraph D the word "lease" will mean "sublease" if the
Security Instrument is on a leasehold.

       **E.  CROSS-DEFAULT PROVISION.** Borrower's default or breach under
any note or agreement related to the Property in which Lender has an interest will be a
breach under the Security Instrument and Lender may invoke any of the remedies permitted
by the Security Instrument

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4
Family Rider.

MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

_____ (Seal)        _____
Libby F Markowitz     -Borrower       MARVIN MARKOWITZ

MIN: ███████████████    Loan Number: ███████████

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 14 th    day of    February, 2024    ,
and is incorporated into and amends and supplements the Mortgage, Mortgage Deed, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to  GREENBOX LOANS INC, A CALIFORNIA CORPORATION
(the "Lender")
of the same date and covering the Property described in the Security Instrument and located at:

1226 S. Bedford Street Unit #502, Los Angeles, California 90035

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

BEDFORD TWENTY

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the representations, warranties, covenants, and
agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    Condominium Obligations.** Borrower will perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of
regulations; and (iv) other equivalent documents. Borrower will promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

**B.    Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is
satisfactory to Lender and which provides insurance coverage in the amounts (including deductible
levels), for the periods, and against loss by fire, hazards included within the term "extended coverage,"
and any other hazards, including, but not limited to, earthquakes, winds, and floods, for which Lender
requires insurance, then (i) Lender waives the provision in Section 3 for the portion of the Periodic
Payment made to Lender consisting of the yearly premium installments for property insurance on the
Property, and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the
Property is deemed satisfied to the extent that the required coverage is provided by the Owners
Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower will give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and will be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower will take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and will be paid to Lender. Such proceeds will be applied by Lender to the sums secured by the Security Instrument as provided in Section 12

**E. Lender's Prior Consent.** Borrower will not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents unless the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F will become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts will bear interest from the date of disbursement at the Note rate and will be payable, with interest, upon notice from Lender to Borrower requesting payment.

**MULTISTATE CONDOMINIUM RIDER - Single Family -**
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**FORM 3140 07/2021**                              Page 2 of 3

ʎfDocMagic

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

_____ (Seal)
Libby  F  Markowitz                    -Borrower

_____
MARVIN MARKOWITZ

Exhibit 3

Loan Number ███████████

# GUARANTY

WHEREAS, the undersigned,  Libby F Markowitz

(and together with   GREENBOX LOANS INC, A CALIFORNIA CORPORATION                                  )
(called "Guarantor" and collectively called "Guarantors"), are substantially financially or otherwise interested in
1226 S. Bedford Street Unit #502, Los Angeles, California 90035                    (the "Property"),
and   Libby F Markowitz
Limited Liability Company/Corporation (herein called "Borrower"), the maker of the Borrower's Note in the principal
amount of $ 930,000.00                    payable to  GREENBOX LOANS INC, A CALIFORNIA
CORPORATION                    (the "Lender") and its successors and assigns (herein called the "Note"),
and it will be of substantial economic benefit to the Guarantors, and each of them, for the Borrower to execute and
deliver the Note and borrow the principal sum evidenced thereby and secured by the Mortgage, Deed of Trust or
Security Deed therein described (herein called the "Security Instrument"). The Note and the Security Instrument,
together with all riders thereto, are collectively referred to herein as the "Loan Documents"

WHEREAS, as a condition to making the Note to Borrower, Lender requires that Guarantor execute this Guaranty.

NOW, THEREFORE, in consideration of the premises and mutual covenants set forth herein, and for other good and
valuable considerations, the receipt and sufficiency of all of which are hereby acknowledged, and in order to induce
any person or persons who may be and become the holder of the Note to accept the same, the Guarantors, and each
of them, hereby jointly and severally agree as follows:

1.    The Guarantors, and each of them, hereby jointly and severally, unconditionally, absolutely and irrevocably
guarantee, for the benefit of each and every present and future holder or holders of the Note (all herein called the
"Obligees"), the full and prompt payment and performance when due, whether at maturity or earlier, by reason of
acceleration or otherwise, and at all times thereafter of:

    a.   the principal of, interest on, and all other amounts due at any time under the Note or any other Loan
Document, including prepayment penalties, late payment charges, interest charge at the default rate (if
applicable), and accrued interest as provided in the Loan Documents, advances, costs and expenses to
perform the obligations of Borrower or to protect the Property or the security of the Security Instrument;

    b.   the payment and performance of all other obligations (including indemnity obligations) of Borrower under
the Loan Documents;

    c.   all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses
of expert witnesses and costs of investigation, incurred by Lender as a result of any Event of Default under
the Loan Documents or in connection with efforts to collect any amount due under the Loan Documents,
or to enforce the provisions of the Loan Documents, including those incurred in post-judgment collection
efforts and in any bankruptcy or insolvency proceeding or any judicial or non-judicial foreclosure
proceeding or other exercise by lender of its rights and remedies under any Loan Document (a "Foreclosure
Event"), including any action for relief from the automatic stay of any bankruptcy proceeding or
Foreclosure Event, to the extent permitted by law; and

    d.   all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert
witnesses, incurred by Obligee in enforcing its rights under the Guaranty (1a., 1b., 1c., and 1d.,
collectively are herein defined as "Indebtedness Hereby Guaranteed").

2.    This Guaranty shall be a continuing guaranty, shall be binding upon the Guarantors, and each of them, jointly
and severally, and upon their respective heirs, administrators, successors, legal representatives and assigns, and shall
remain in full force and effect, and shall not be discharged, impaired or affected by (i) the existence or continuance

GUARANTY
G.CST  07/25/16                                      Page 1 of 5                                      DocMagic *eForms*
www.docmagic.com

of any obligation on the part of the Borrower on or with respect to the Indebtedness Hereby Guaranteed, or any obligation under the Note, the Security Instrument or any other Loan Document, or under this Guaranty (collectively, the "Obligations"); (ii) the power or authority (or any lack thereof) of the Borrower to issue the Note or to execute, acknowledge or deliver the Note or the Security Instrument or any other Loan Document; (iii) the validity or invalidity of the Note or the Security Instrument or any other Loan Document; (iv) any defense whatsoever that the Borrower may or might have to the payment of the Indebtedness Hereby Guaranteed or to the performance or observance of any of the terms, provisions, covenants and agreements contained in the Note or the Security Instrument or other Loan Document; (v) any limitation or exculpation of liability on the part of the Borrower; (vi) the existence or continuance of the Borrower as a legal entity; (vii) the transfer by the Borrower of all or any part of the Premises referred to in the Security Instrument (herein called the "Premises") to any other corporation, person or entity; (viii) any sale, pledge, surrender, indulgence, alteration, substitution, exchange, change in, increase in, extension, modification or other disposition of any of the Indebtedness Hereby Guaranteed or Obligations, all of which the Obligees are hereby expressly authorized to make from time to time without notice to the Guarantors or any of them, or to anyone; (ix) the acceptance by the Obligees, or any of them, of any security for, or other guarantees upon, all or any part of the Indebtedness Hereby Guaranteed or Obligations; (x) any failure, neglect or omission on the part of the Obligees, or any of them, to realize or protect any of the Indebtedness Hereby Guaranteed or any collateral or security therefor, or to exercise any lien upon or right or appropriation of any moneys, credits or property of the Borrower toward the liquidation of the Indebtedness Hereby Guaranteed or any application of payments or credits thereon; (xi) any right, claim or offset which Guarantors may have against Borrower; or (xii) any defense (other than the payment of the Indebtedness Hereby Guaranteed and performance of the Obligations in accordance with its terms) that the Guarantors, or any of them, may or might have to their respective undertakings, liabilities and obligations hereunder, each and every such defense being hereby waived by the Guarantors and each of them; it being understood and agreed that this Guaranty, and the undertakings, liabilities and obligations of the Guarantors, and each of them, hereunder, shall not be affected, discharged, impaired or varied by act, omission or circumstance whatsoever (whether or not specifically enumerated above) except the due and punctual payment of the Indebtedness Hereby Guaranteed and performance of the Obligations, and then only to the extent thereof.

The Obligees shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on the Indebtedness Hereby Guaranteed or the Obligations, or any part thereof; and in order to hold the Guarantors, or any of them, liable hereunder, there shall be no obligation on the part of any Obligee, or anyone, at any time, to proceed against the Borrower, its properties or estates, or to proceed against any other Guarantor, or to resort to any collateral, security, property, liens or other rights or remedies whatsoever.

3.    The death of any Guarantor shall not terminate this Guaranty as to any surviving Guarantor, and shall not terminate this Guaranty as to the estate of the deceased Guarantor.

4.    The Obligees, or any of them, shall have the right to enforce this Guaranty against any Guarantor for and to the full amount of the Indebtedness Hereby Guaranteed, with or without enforcing or attempting to enforce this Guaranty against any other Guarantor or any security for the obligation of any of them, and whether or not proceedings or steps are pending or have been taken or have been concluded to enforce or otherwise realize upon the obligation or security of the Borrower or any other Guarantor; and the payment of any amount or amounts by any Guarantor, pursuant to his obligation hereunder, shall not in any way entitle such Guarantor, either at law, in equity or otherwise, to any right, title or interest {whether by way of subrogation or otherwise) in and to any of the Indebtedness Hereby Guaranteed, or any principal or interest payments theretofore, then and thereafter at any time made by the Borrower on the Indebtedness Hereby Guaranteed, or made by anyone on behalf of the Borrower, or in and to any security therefor, unless and until the full amount of the Indebtedness Hereby Guaranteed has been fully paid.

5.    No release or discharge of any Guarantor shall release or discharge any other Guarantor unless and until all of the Indebtedness Hereby Guaranteed shall have been fully paid and discharged and all Obligations shall have been fully performed; and the failure or refusal of any Guarantor named herein to execute this Guaranty shall not release, affect or reduce the liability of any other Guarantor.

GUARANTY
G.CST  07/25/16                                    Page 2 of 5                          DocMagic *eForms*
                                                                                        www.docmagic.com

6.   No act of commission or omission of any kind, or any time, on the part of any Obligee, in respect to any matter whatsoever, shall in any way affect or impair this Guaranty; and time is of the essence hereof.

7.   All diligence in collection or prosecution, and all presentment, demand, protest and/or notice, as to any of the Guarantors, of dishonor and of default and of non-payment and of the creation and existence of any and all of the Indebtedness Hereby Guaranteed or of performance or nonperformance of any Obligation, and of any security and collateral therefor, and of the acceptance of this Guaranty, and of any and all extensions of credit and indulgence hereunder, are expressly waived by the Guarantors, and each of them.

8.   Any Obligee may, without any notice whatsoever to anyone, sell, assign or transfer all or any part of the Indebtedness Hereby Guaranteed, or grant participations in the Indebtedness Hereby Guaranteed, and in any and every such event, each and every immediate and successive assignee, transferee, holder of or participant in all or any part of the Indebtedness Hereby Guaranteed shall have the right to enforce this Guaranty by suit or otherwise, for the benefit of such assignee, transferee, holder or participant, as fully as if such assignee, transferee, holder or participant were herein by name specifically given such rights, powers and benefits.

9.   This Guaranty, and each and every part hereof, shall be binding upon the Guarantors, and each of them, jointly and severally, and upon the heirs, administrators, legal representatives, successors and assigns of each of the Guarantors, and shall inure to the pro rata benefit of each and every future holder of the Note or any interest in the Indebtedness Hereby Guaranteed.

10.  The delivery of the Note for value to any person shall, without more, constitute conclusive evidence of the acceptance hereof, and of the reliance hereon by each and every from time to time holder of the Note or any interest in the Indebtedness Hereby Guaranteed.

11.  Guarantor acknowledges and agrees that Obligee is authorized to obtain a credit report (if applicable) on Guarantor at any time

12.  As used herein, the masculine gender shall include the feminine, and the singular case shall include the plural and the plural the singular, wherever the same may be applicable.

13.  The obligation and liability of each Guarantor shall for all purposes be a joint and several obligation and liability for all of the Indebtedness Hereby Guaranteed.

14.  Notwithstanding any modification, discharge or extensio.n of the Indebtedness Hereby Guaranteed or any amendment, modification, stay or cure of the Obligees' rights under the Note, Security Instrument or other Loan Document which may occur in any bankruptcy or reorganization case or proceeding affecting the Borrower, whether permanent or temporary, and whether or not assented to by the Obligees, the Guarantors hereby agree that they shall be obligated hereunder to pay the Indebtedness Hereby Guaranteed and discharge the other Obligations in accordance with the terms of the Note, Security Instrument and other Loan Documents and the terms of this Guaranty as in effect on the date hereof.

15.  Each Guarantor understands and acknowledge that by virtue of this Guaranty such Guarantor has specifically assumed any and all risks of a bankruptcy or reorganization case or proceeding affecting the Borrower; and, as an example and not by way of limitation, a subsequent modification of the Note, Security Instrument or other Loan Documents in any reorganization case concerning the Borrower shall not affect the obligation of such Guarantors to pay the Note and all other Indebtedness Hereby Guaranteed and to perform and observe all obligations in accordance with the original terms thereof.

16.  Each Guarantor hereby agrees that if at any time all or any part of any payment theretofore applied by any of the Obligees to any Indebtedness Hereby Guaranteed is rescinded or returned by any of the Obligees for any reason

GUARANTY
G.CST  07/25/16                          Page 3 of 5                    DocMagic *eForms*
                                                                        www.docmagic.com

whatsoever (including, without limitation, the insolvency, bankruptcy, liquidation or reorganization of any party), the Indebtedness Hereby Guaranteed shall, for the purposes of this Guaranty, be deemed to have continued in existence to the extent of such payment, notwithstanding such application by any of the Obligees, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to the Indebtedness Hereby Guaranteed, all as though such application by any of the Obligees had not been made.

17.    Guarantors each hereby acknowledge that the transactions relating to the Indebtedness Hereby Guaranteed, the Loan Documents and this Guaranty were negotiated in the State of North Carolina, County of Mecklenburg (the "Applicable County") and that this Guaranty shall be interpreted under and governed by the laws of the State of North Carolina.

18.    The Guarantors each hereby acknowledge and agree that for all purposes hereof all actions or proceedings in any way, manner or respect arising out of or relating to this Guaranty and the transactions contemplated herein (herein generally called "Litigation"), shall be litigated only in courts having situs in the Applicable County or in Federal Court in the District in which the Applicable County is located. The Guarantors and each of them hereby consent and submit to the jurisdiction of any local or State court located within the Applicable County or any Federal Court in the District in which the Applicable County is located. The Guarantors and each of them hereby waive any right they or any of them may have to transfer or change the venue of any Litigation brought against Guarantors or any of them. The Guarantors and each of them hereby irrevocably waive the right to trial by jury with respect to any Litigation.

19.    It shall be an Event of Default under this Guaranty and under the other Loan Documents in the event that: any Guarantor shall be dissolved, die or be adjudged legally incompetent and either (i) substitute collateral, or (ii) a replacement guarantor with sufficient creditworthiness to support the obligations, that is acceptable to Obligees in Obligees' sole discretion, is not found within sixty (60) days of said guarantor's dissolution, death or having been adjudged legally incompetent; or

20.    This Guaranty may be executed in separate counterparts and such counterparts, taken together, shall constitute a fully executed and enforceable Guaranty.

21.    If any one or more of the provisions or terms of this Guaranty shall be held invalid, pursuant to applicable state law or otherwise, then such provisions or terms shall be deemed severable from the remaining terms of this Guaranty and shall in no way affect the validity or enforceability of the other provisions of this Guaranty, and only the enforceable terms of this Guaranty shall survive.

22.    Guarantor acknowledges, represents and warrants that:

    a.    it understands the nature and structure of the transactions contemplated by this Guaranty and the other Loan Documents;

    b.    it is familiar with the provisions of all of the documents and instruments relating to such transactions;

    c.    it understands the risks inherent in such transactions, including the risk of loss of all or any part of the Property or of the assets of the Guarantor;

    d.    it has had the opportunity to consult counsel;

    e.    it has not relied on Lender or any Obligee for any guidance or expertise in analyzing the financial or other consequences of the transactions contemplated by this Guaranty or any other Loan Document or otherwise relieved on Lender or any Obligee in any manner in connection with interpreting, entering into or otherwise in connection with this Guaranty, any other Loan Document or any of the matters contemplated hereby or thereby.

X _____
Libby F Markowitz

X _____

IN WITNESS WHEREOF, the Guarantors have signed and sealed this Guaranty as of the day and year first above written.

GREENBOX LOANS INC
[Name]

Address: 3250 WILSHIRE BLVD. #1900

LOS ANGELES, CALIFORNIA 90010

Social Security Number: ███████████

LIST ALL GUARANTORS AND THEIR ADDRESSES

STATE OF     CALIFORNIA                     )

COUNTY OF   Los Angeles                     )

I, the undersigned, a Notary Public in and for the county and state aforesaid, do hereby certify that

Libby F Markowitz

as GUARANTOR, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein and set forth.
*her*

Given under me hand and notarial seal this *15th* day of *FEBRUARY , 2024*      .

LARRY P. GEORGE
Notary Public - California
Los Angeles County
Commission # 2395607
My Comm. Expires Mar 26, 2026

*Larry P. George*
Notary Public
TBD

GUARANTY
G.CST  07/25/16                          Page 5 of 5                    DocMagic *eForms*
                                                                        www.docmagic.com

Exhibit 4



**This page is part of your document - DO NOT DISCARD**



## 20240754961



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/04/24 AT 11:24AM**

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 100.00 |



**L E A D S H E E T**



202411040150025

00024933983



**SEQ:**
**01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E535543

4774844

Recording Requested By
Meridian Asset Services, LLC

Prepared By and Return To:
**Murat Deniz**
Meridian Asset Services, LLC
140 Fountain Parkway N Suite 100
St. Petersburg, FL 33716
(239) 351-2442

Space above for Recorder's use

Loan No: ███████

### ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS**, whose address is **P.O. BOX 2026, FLINT, MI 48501-2026**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE ON BEHALF OF PRPM 2024-NQM2 TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all interest, all liens, and any rights due or to become due thereon under that certain deed of trust described below.

Date of Deed of Trust: **2/14/2024**
Original Loan Amount: **$930,000.00**
Executed by (Borrower(s)): **MARMAR BEDFORD LLC**
Original Trustee:  **FIDELITY NATIONAL TITLE**
Original Beneficiary:  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book N/A, Page N/A
Document/Instrument No: **20240115952** in the Recording District of **Los Angeles, CA**, Recorded on **2/22/2024**.

Property more commonly described as: **1226 S. BEDFORD STREET UNIT #502, LOS ANGELES, CALIFORNIA 90035**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____10/17/24_____

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS**

By: __Raynold Eshaghian__          Witness Name: __Qian Weave__
Title: __Vice President__

MIN# ███████

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of    CALIFORNIA
County of    _Los Angeles_

On _____10/17/2024_____, before me, _Hyun a Lee_, a Notary Public, personally
appeared _Raymond Eshaghian, Vice President_ proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **CALIFORNIA** that the foregoing
paragraph is true and correct.

Witness my hand and official seal.

Signature _____ (Seal)



HYUN IL LEE
COMM. #2477914
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires: December 30, 2027

Exhibit 5

Shannon Doyle, Esq. (207291)
GHIDOTTI | BERGER, LLP
1920 Old Tustin Ave
Santa Ana, CA 92705
Tel: (949) 427-2010, Ex 1058
sdoyle@ghidottiberger.com

Attorneys for Movant
U.S. Bank Trust Company, National Association, not in its individual capacity, but solely as
trustee on behalf of PRPM 2024-NQM2 Trust, it successors and/or assignees

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In Re:<br><br>Marmar Bedford, LLC,<br><br>     Debtor. | ) Case No.: 2:25-bk-20775-BB<br>)<br>) Chapter 11<br>)<br>)<br>) **DECLARATION OF REAL ESTATE**<br>) **AGENT FRANCISCO URSULO IN**<br>) **SUPPORT OF MOTION FOR RELIEF**<br>) **FROM STAY**<br>)<br>) DATE:<br>) TIME:.<br>) CTRM:<br>)<br>) Honorable Sheri Bluebond<br>) |

I, FRANCISCO URSULO., declare as follows:

    1.  I have personal knowledge of the following matters and, if called upon as a witness, I could and would testify as to the matters set forth herein.

    2.  I am a real estate agent licensed with the California Department of Real Estate.

    3.  My real estate license ID is 01946059**.**

    4.  As a licensed real estate agent, I am qualified to perform price opinion's on real properties.

1

5.   I am familiar with the market values in and around Los Angeles County, California, including the Los Angeles area.

6.   I was asked to perform an appraisal for the real property located at 1226 S Bedford St, Unit 502, Los Angeles, CA 90035 (the "Property").

7.   I completed a Broker's Price Opinion of value (the "BPO") setting forth the Property's value as of November 5, 2025.  A true and correct copy of the BPO is incorporated here with this Declaration as  **Exhibit "5".**

8.   In preparing the BPO, I collected, verified and interpreted various data necessary to render an opinion of value.  The data upon which I relied is of the type and quantity relied upon by other real estate agents when rendering an opinion of value of real property.

9.   To render my opinion, I performed research from the road, google, prior listings that were cancelled in the multiple listing service and the other comparable properties in the area to the best of my knowledge.

10. .The comparable sales that I utilized in establishing the market value of the Property are detailed in the BPO.

11. Based on my observations of the Property, knowledge of the area, and valuation determination process as more particularly set forth in the Report, it is my professional opinion that the value of the Property at the time of the BPO was $1,190,000.00.

I declare under penalty of perjury of laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed this ___23rd_____ day of December 2025 at __Los Angeles_____, California.

_____

FRANCISCO URSULO

DECLARATION OF FRANCISCO URSULO IN SUPPORT OF MOTION FOR RELIEF FROM STAY

# DRIVE-BY BPO
by ClearCapital



1226 S BEDFORD ST UNIT 502
LOS ANGELES, CA 90035

Loan Number

**$1,190,000**
🟡 As-Is Price

Please Note: This report was completed with the following assumptions: Market Approach: **Fair Market Price** , Marketing Time: **Typical** . Important additional information relating to this report, including use and restrictions, is contained in an attached addendum which is an integral part of this report.

| | | | |
|---|---|---|---|
| **Address** | 1226 S Bedford St Unit 502, Los Angeles, CA 90035 | **Order ID** | |
| **Inspection Date** | 11/05/2025 | **Date of Report** | 11/06/2025 |
| **Loan Number** | | **APN** | 4332-022-066 |
| **Borrower Name** | MARKOWITZ, LIBBY | **County** | Los Angeles |

| | | **Property ID** | |

**Tracking IDs**

| **Order Tracking ID** | Tue Nov 04 25 5:00P - Wed Nov 05 25 9:00 A Batch | **Tracking ID 1** | |
|---|---|---|---|
| **Tracking ID 2** | -- | **Tracking ID 3** | -- |

## General Conditions

| | |
|---|---|
| Owner | MARMAR BEDFORD LLC |
| R. E. Taxes | $10,738 |
| Assessed Value | $889,546 |
| Zoning Classification | Residential LAR3 |
| Property Type | Condo |
| Occupancy | Occupied |
| Ownership Type | Fee Simple |
| Property Condition | Average |
| Estimated Exterior Repair Cost | $0 |
| Estimated Interior Repair Cost | $0 |
| Total Estimated Repair | $0 |
| HOA | BEDFORD HOA 888-888-8888 |
| Association Fees | $250 / Month (Landscaping,Insurance) |
| Visible From Street | Visible |
| Road Type | Public |

**Condition Comments**

Subject was in average condition based on my inspection from the road. The quality of construction is also of average quality and is consistent with the area. Subject conforms to the area and surrounding properties.

## Neighborhood & Market Data

| | |
|---|---|
| Location Type | Suburban |
| Local Economy | Improving |
| Sales Prices in this Neighborhood | Low: $1,120,000 High: $1,260,000 |
| Market for this type of property | Increased 6 % in the past 6 months. |
| Normal Marketing Days | <30 |

**Neighborhood Comments**

Subject is located in a residential area with commercial use limited to exterior thoroughfares. Access to parks, schools, freeways and transportation. Market is increasing due to overall economic growth and increasing buyer demand.

# DRIVE-BY BPO
by ClearCapital

1226 S BEDFORD ST UNIT 502
LOS ANGELES, CA 90035

Loan Number

**$1,190,000**
● As-Is Price

## Current Listings

|  | Subject | Listing 1 | Listing 2 * | Listing 3 |
|---|---|---|---|---|
| **Street Address** | 1226 S Bedford St Unit 502 | 1211 S Shenandoah Street 304 | 1123 S Shenandoah Street 101 | 234 S Gale Drive 308 |
| **City, State** | Los Angeles, CA | Los Angeles, CA | Los Angeles, CA | Beverly Hills, CA |
| **Zip Code** | 90035 | 90035 | 90035 | 90211 |
| **Datasource** | Tax Records | MLS | MLS | MLS |
| **Miles to Subj.** | -- | 0.10 ¹ | 0.14 ¹ | 0.66 ¹ |
| **Property Type** | Condo | Condo | Condo | Condo |
| **Original List Price $** | $ | $1,095,000 | $1,190,000 | $1,295,000 |
| **List Price $** | -- | $1,095,000 | $1,190,000 | $1,295,000 |
| **Original List Date** |  | 06/24/2025 | 09/04/2025 | 10/24/2025 |
| **DOM · Cumulative DOM** | -- · -- | 134 · 135 | 62 · 63 | 12 · 13 |
| **Age** (# of years) | 3 | 32 | 2 | 36 |
| **Condition** | Average | Average | Average | Average |
| **Sales Type** | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| **Condo Floor Number** | 1 | 1 | 1 | 1 |
| **Location** | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| **View** | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| **Style/Design** | Other Condo | Other Condo | Other Condo | Other Condo |
| **# Units** | 1 | 1 | 1 | 1 |
| **Living Sq. Feet** | 1,530 | 1,601 | 1,534 | 1,632 |
| **Bdrm · Bths · ½ Bths** | 3 · 4 | 2 · 4 | 3 · 3 | 2 · 3 |
| **Total Room #** | 9 | 8 | 8 | 7 |
| **Garage** (Style/Stalls) | Carport 2 Car(s) | Carport 2 Car(s) | Carport 2 Car(s) | Carport 2 Car(s) |
| **Basement** (Yes/No) | No | No | No | No |
| **Basement** (% Fin) | 0% | 0% | 0% | 0% |
| **Basement Sq. Ft.** | -- | -- | -- | -- |
| **Pool/Spa** | -- | -- | -- | -- |
| **Lot Size** | 0 acres | 0.00 acres | 0.00 acres | 0.00 acres |
| **Other** | None | None | None | None |

\* Listing 2 is the most comparable listing to the subject.
¹ Comp's "Miles to Subject" was calculated by the system.
² Comp's "Miles to Subject" provided by Real Estate Professional.
³ Subject $/ft based upon as-is sale price.

**Listing Comments**  Why the comparable listing is superior or inferior to the subject.

**Listing 1**  Similar to subject with similar condition. Similar property style and dimensions.

**Listing 2**  Similar to subject due to similar condition and property type.

**Listing 3**  Similar to subject due to condition and property type. Similar property style.

# DRIVE-BY BPO
by ClearCapital



1226 S BEDFORD ST, UNIT 502
LOS ANGELES, CA 90035

Loan Number

**$1,190,000**
● As-Is Price

## Recent Sales

| | Subject | Sold 1 * | Sold 2 | Sold 3 |
|---|---|---|---|---|
| Street Address | 1226 S Bedford St Unit 502 | 1123 S Shenandoah Street 103 | 117 N Gale Drive 5 | 1515 S Holt Avenue 503 |
| City, State | Los Angeles, CA | Los Angeles, CA | Beverly Hills, CA | Los Angeles, CA |
| Zip Code | 90035 | 90035 | 90211 | 90035 |
| Datasource | Tax Records | MLS | MLS | MLS |
| Miles to Subj. | -- | 0.14 ¹ | 0.83 ¹ | 0.30 ¹ |
| Property Type | Condo | Condo | Condo | Condo |
| Original List Price $ | -- | $1,139,000 | $1,199,999 | $1,350,000 |
| List Price $ | -- | $1,139,000 | $1,199,999 | $1,350,000 |
| Sale Price $ | -- | $1,095,000 | $1,105,000 | $1,300,000 |
| Type of Financing | -- | Conventional | Conventional | Conventional |
| Date of Sale | -- | 06/03/2025 | 09/05/2025 | 08/01/2025 |
| DOM · Cumulative DOM | -- · -- | 91 · 120 | 192 · 189 | 114 · 114 |
| Age (# of years) | 3 | 2 | 34 | 4 |
| Condition | Average | Average | Average | Average |
| Sales Type | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| Condo Floor Number | 1 | 1 | 1 | 1 |
| Location | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| View | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| Style/Design | Other Condo | Other Condo | Other Condo | Other Condo |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 1,530 | 1,453 | 1,714 | 1,560 |
| Bdrm · Bths · ½ Bths | 3 · 4 | 3 · 3 | 2 · 3 | 3 · 3 |
| Total Room # | 9 | 8 | 7 | 8 |
| Garage (Style/Stalls) | Carport 2 Car(s) | Carport 2 Car(s) | Carport 2 Car(s) | Carport 2 Car(s) |
| Basement (Yes/No) | No | No | No | No |
| Basement (% Fin) | 0% | 0% | 0% | 0% |
| Basement Sq. Ft. | | -- | -- | -- |
| Pool/Spa | -- | -- | -- | -- |
| Lot Size | 0 acres | 0 acres | 0 acres | 0 acres |
| Other | None | None | None | None |
| Net Adjustment | -- | +$12,700 | -$8,400 | +$2,000 |
| Adjusted Price | -- | $1,107,700 | $1,096,600 | $1,302,000 |

* Sold 1 is the most comparable sale to the subject.
¹ Comp's "Miles to Subject" was calculated by the system.
² Comp's "Miles to Subject" provided by Real Estate Professional.
³ Subject $/ft based upon as-is sale price.

# DRIVE-BY BPO
by ClearCapital

**1226 S BEDFORD ST UNIT 502**
LOS ANGELES, CA 90035

Loan Number

**$1,190,000**
● As-Is Price

## Recent Sales - Cont.

**Reasons for Adjustments**  Why the comparable sale is superior or inferior to the subject.

**Sold 1**   Similar to subject due to condition and similar subject dimensions. Adjusted for bedroom variance 0. Adjusted for bath room variance 5000. Adjusted for GLA 7700

**Sold 2**   Similar to subject due to similar GLA, similar bed and bath, condition and location. Adjusted for bedroom variance 5000. Adjusted for bath room variance 5000. Adjusted for GLA -18400

**Sold 3**   Similar location and appeal, similar gla and condition. Adjusted for bedroom variance 0. Adjusted for bath room variance 5000. Adjusted for GLA -3000

# DRIVE-BY BPO
by ClearCapital



**1226 S BEDFORD ST UNIT 502**
LOS ANGELES, CA 90035

Loan Number

**$1,190,000**
○ As-Is Price

## Subject Sales & Listing History

| | |
|---|---|
| **Current Listing Status** | Not Currently Listed |
| **Listing Agency/Firm** | |
| **Listing Agent Name** | |
| **Listing Agent Phone** | |
| **# of Removed Listings in Previous 12 Months** | 0 |
| **# of Sales in Previous 12 Months** | 0 |

**Listing History Comments**

Subject has not been listed in the past 12 months or sold in the past 12 months. There is no current listing for subject property.

| Original List Date | Original List Price | Final List Date | Final List Price | Result | Result Date | Result Price | Source |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## Marketing Strategy

| | As Is Price | Repaired Price |
|---|---|---|
| **Suggested List Price** | $1,200,000 | $1,200,000 |
| **Sales Price** | $1,190,000 | $1,190,000 |
| **30 Day Price** | $1,170,000 | -- |

**Comments Regarding Pricing Strategy**

Value based on comp data found from the MLS, I used comparables within the same market. Based on the current comps and market the subject should sell in the indicated range as based on competitive sales and listings. After a thorough search in the MLS for comps of similar size and property type, I had to extend over a 1 mile radius in this area due to a lack of comparables found that were similar and reasonable substitutes for subject property.

# DRIVE-BY BPO
by ClearCapital

**1226 S BEDFORD ST UNIT 502**
LOS ANGELES, CA 90035

Loan Number

 **As-Is Price**
**$1,190,000**

## Clear Capital Quality Assurance Comments Addendum

| | |
|---|---|
| **Reviewer's Notes** | The broker's as-is conclusion reflects the market for the subject. Comps are within a reasonable distance, relatively current, and accurately reflect the subject's defining characteristics. Thus, the as-is conclusion appears to be adequately supported. |

# DRIVE-BY BPO
by ClearCapital

**1226 S BEDFORD ST UNIT 302**
LOS ANGELES, CA 90035

Loan Number

$1,190,000
● As-Is Price

## Subject Photos




Front



Address Verification



Side



Street



Street



Street

# DRIVE-BY BPO
by ClearCapital



1226 S BEDFORD ST UNIT 502
LOS ANGELES, CA 90035    Loan Number    $1,190,000
● As-Is Price

## Subject Photos



Other

# DRIVE-BY BPO
by ClearCapital

## Listing Photos

L1  1211 S Shenandoah Street 304
Los Angeles, CA 90035



Front

L2  1123 S Shenandoah Street 101
Los Angeles, CA 90035



Front

L3  234 S Gale Drive 308
Beverly Hills, CA 90211



Front


DRIVE-BY BPO
by ClearCapital

1226 S BEDFORD ST UNIT 502
LOS ANGELES, CA 90035                    Loan Number        ● As-Is Price
$1,190,000

# Sales Photos

**S1**  1123 S Shenandoah Street 103
Los Angeles, CA 90035



Front

**S2**  117 N Gale Drive 5
Beverly Hills, CA 90211



Front

**S3**  1515 S Holt Avenue 503
Los Angeles, CA 90035



Front

# DRIVE-BY BPO
by ClearCapital




**1226 S BEDFORD ST UNIT 502**
LOS ANGELES, CA 90035

**Loan Number**

**$1,190,000**
● As-Is Price

---

## ClearMaps Addendum

| | | | | |
|---|---|---|---|---|
| **Address** ⭐ | 1226 S Bedford St Unit 502, Los Angeles, CA 90035 | | | |
| **Loan Number** | | **Suggested List** $1,200,000 | **Suggested Repaired** $1,200,000 | **Sale** $1,190,000 |



SUBJECT: 1226 S Bedford St # 502, Los Angeles, CA 90035

©2025 ClearCapital.com, Inc

| | Comparable | Address | Miles to Subject | Mapping Accuracy |
|---|---|---|---|---|
| ⭐ | Subject | 1226 S Bedford St Unit 502, Los Angeles, CA 90035 | -- | Parcel Match |
| L1 | Listing 1 | 1211 S Shenandoah Street 304, Los Angeles, CA 90035 | 0.10 Miles [1] | Parcel Match |
| L2 | Listing 2 | 1123 S Shenandoah Street 101, Los Angeles, CA 90035 | 0.14 Miles [1] | Parcel Match |
| L3 | Listing 3 | 234 S Gale Drive 308, Beverly Hills, CA 90211 | 0.66 Miles [1] | Parcel Match |
| S1 | Sold 1 | 1123 S Shenandoah Street 103, Los Angeles, CA 90035 | 0.14 Miles [1] | Parcel Match |
| S2 | Sold 2 | 117 N Gale Drive 5, Beverly Hills, CA 90211 | 0.83 Miles [1] | Parcel Match |
| S3 | Sold 3 | 1515 S Holt Avenue 503, Los Angeles, CA 90035 | 0.30 Miles [1] | Street Centerline Match |

[1] The Comparable "Distance from Subject" value has been calculated by the Clear Capital system.
[2] The Comparable "Distance from Subject" value has been provided by the Real Estate Professional.

# DRIVE-BY BPO
by ClearCapital



**1226 S BEDFORD ST UNIT 502**
LOS ANGELES, CA 90035

Loan Number

$1,190,000
🟡 As-Is Price

---

## Addendum: Report Purpose

### Market Approach and Market Time

The Market Approach of this report, as established by the customer, is: **Fair Market Price**. (See definition below.)
The Marketing Time as specified by the customer is **Typical**. (See definition below.)

| Definitions: | |
|---|---|
| Fair Market Price | A price at which the property would sell between a willing buyer and a willing seller neither being compelled by undue pressure and both having reasonable knowledge of relevant facts. |
| Distressed Price | A price at which the property would sell between a willing buyer and a seller acting under duress. |
| Marketing Time | The amount of time the property is exposed to a pool of prospective buyers before going into contract. The customer either specifies the number of days, requests a marketing time that is typical to the subject's market area and/or requests an abbreviated marketing time. |
| Typical for Local Market | The estimated time required to adequately expose the subject property to the market resulting in a contract of sale. |

# DRIVE-BY BPO
by ClearCapital

1226 S BEDFORD ST UNIT 502
LOS ANGELES, CA 90035

Loan Number

$1,190,000
⬤ As-Is Price

## Addendum: Report Purpose - cont.

### Report Instructions

This section shows the instructions that were approved by the customer and provided to the broker prior to completing the report.
Instructions last updated: 05/20/2024
Purpose:
Please determine a fair market price for this property at which it would sell in a typical marketing time for the area.

Customer Specific Note:
Comp proximity is this client's primary focus. Other search parameters can be expanded in order to provide comps from the subject's immediate neighborhood. If distance must be expanded, please provide a detailed explanation.
If the subject is a Commercial property, contact Clear Capital immediately at 530-582-5011 for directions on how to proceed with the report. Please do preliminary research on the subject before going out to the property.

This customer has requested that online and MLS research be completed in order to accurately report the subjects listing history.

Comparable Requirements:
1. Please use comparables from the same neighborhood, block or subdivision whenever possible.
2. Use normal/non-distressed/unforced sales and listing comparables whenever possible. If distressed activity is the prevailing market force in the neighborhood, please ensure detailed comments are provided.
3. Do not use damaged or abandoned properties, foreclosures, REOs, or properties clearly inferior compared to the general neighborhood standard.
4. Whenever possible, use comps that have sold during a similar seasonal market as compared to the effective date of the report.
5. Whenever possible, use comps that have closed in the past 3 months to show the current market conditions. In rapidly changing markets, active listing comps should be given equal or greater weight than sold comps in your analysis.
6. In assessing the AS-IS price for the subject, please take it to mean:

- Normal/ non-distressed/ un-forced sale
- Properly and professionally marketed
- Taking place during the current seasonal market
- Allowing non-distressed marketing timelines typical for the neighborhood.

7. In assessing Quick Sale price for the subject, please take it to mean:

- Normal/ non-distressed/ unforced sales, allowing 30 days to secure a buyer
- Properly and professionally marketed.

Standard Instructions:
1. Clear Capital Code Of Conduct - Please make sure that you are always abiding by the Clear Capital Code of Conduct when completing valuation reports.
2. If the subject is currently listed, please consider all available information pertaining to the subject's condition. This information should be utilized when developing the assumption of the subject's condition.
3. Use the subject characteristics provided in the report Grid (if preloaded) to evaluate the property. This information is from a full interior appraisal and is assumed to be most accurate. If your inspection reveals obvious inaccuracies, please explain in the narrative of the report.
4. Include sufficient, factual detail to help our mutual customer gain a complete understanding of the subject's neighborhood such as substantiated distance to amenities, parks, schools, commercial or industrial influences, REO activity, traffic, etc.
5. Do not approach occupants or owners.
6. If the subject is a Commercial property, contact Clear Capital immediately at 530-582-5011 for direction on how to proceed with the report. Please do preliminary research on the subject before going out to the property.
7. Please do not accept if you or your office has completed a report on this property in the last 3 months, are currently listing this property, or have any vested interest in the subject property.
8. Clear Capital does not allow any log ins from IP addresses from foreign countries. This includes, but is not limited to; data entry services, form completion services, etc. Also, it is against Clear Capital code of conduct to share your password with anyone who is not a W2 employee in your office.
9. Clear Capital and our mutual customers greatly appreciate your expertise. If you cannot personally inspect the property, select comparables, and determine a price for the subject, please do not accept this report. Per the standards and guidelines adopted by Clear Capital and other industry leaders, the use of assistants to complete any of the

# DRIVE-BY BPO
by ClearCapital

1226 S BEDFORD ST UNIT 302
LOS ANGELES, CA 90035

Loan Number

**$1,190,000**
● As-Is Price

---

## Report Instructions - cont.

aforementioned tasks is not permitted.

10. No part of your analysis or reporting may be based on the race, color, religion, sex, actual or perceived sexual orientation, actual or perceived gender identity, age, actual or perceived marital status, disability, familial status, national origin of either the prospective owners or occupants of the subject property, present owners or occupants of the property, or present owners or occupants of the properties in the vicinity of the subject property, or on any other basis prohibited by federal, state or local law.

11. When commenting on the subject property or comp selections, refrain from the use of unsupported or subjective terms to assess or rate, such as, but not limited to, "high," "low," "good," "bad," "fair," "poor," "strong," "weak," "rapid," "slow," "fast" or "average" without providing a foundation for analysis and contextual information. It is inappropriate to add language that could indicate unconscious bias, including but not limited to: "pride of ownership," "crime-ridden area," "desirable neighborhood or location" or "undesirable neighborhood or location

Undue Influence Concerns

Please contact uiprovider@clearcapital.com for any Undue Influence concerns.

Independence Hotline

Please notify Clear Capital of any independence concerns by calling (530) 550-2138

Terms of Use, Code of Conduct and Professional Discretion:

Due to the importance of an independent opinion of price, please do not discuss your price with anyone or be influenced by list price, pending offers, accept comp packets, repair estimates or the listing agent's opinion.

If you accept and perform this assignment, you do so in accordance with the Clear Capital Vendor Agreement Terms of Use and Code of Conduct to which you agreed.

All interactions with consumers (borrowers, homeowners, POCs, etc.) must be performed in a professional manner. Should you observe any concerning or suspicious activity while you engage with a consumer whether onsite or otherwise, please contact Clear Capital immediately. Please refrain from discussing anything related to the observation with the consumer directly. This includes suspected elder abuse, elder financial abuse, vulnerable adults, fraud, forgery or any violations of local, state or federal laws.

Photo Instructions:

1. Photos should be clear of car window glare, door frames, and mirrors.
2. One current, original photo of the front of the subject, framed and focused, parallel to the horizon.
3. One address verification photo
4. One street scene photo looking down the street
5. Damages (upload enough photos to support your repair cost estimates.)
6. MLS photos of all (3) sold comparables, if available
7. MLS photos of all (3) listing comparables, if available

DRIVE-BY BPO

by ClearCapital

Case 2:25-bk-20775-BB    Doc 22    Filed 01/20/26    Entered 01/20/2     Desc
Main Document    1226 S BEDFORD ST UNIT 502    $1,190,000
                 LOS ANGELES, CA 90035                Loan Number    ● As-Is Price
                 Page 86 of 132

## Broker Information

| | | | |
|---|---|---|---|
| **Broker Name** | Francisco Ursulo | **Company/Brokerage** | SYBIL STEVENSON |
| **License No** | 01946059 | **Address** | 3814 Scandia Way Los Angeles CA 90065 |
| **License Expiration** | 10/18/2028 | **License State** | CA |
| **Phone** | 3236918242 | **Email** | URFRANCISCO@GMAIL.COM |
| **Broker Distance to Subject** | 9.67 miles | **Date Signed** | 11/06/2025 |

*By confirming the above contact and real estate license information and submitting the report, the above signed hereby certifies and agrees that: 1) I personally took the pictures, selected comparables, and determined the price conclusion. 2) To the best of my knowledge, the statements of fact contained in this report are true and correct. 3) The reported analyses, opinions, and conclusions are my personal, impartial, and unbiased professional analyses, opinions, and conclusions. 4) I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved. 5) I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment. 6) My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined price point. 7) I did not base, either partially or completely, my analysis and/or opinion and conclusions in this report on race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law. 8) I maintain errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of this Report.*

### Disclaimer

**This document is not an appraisal as defined by USPAP (Uniform Standards of Professional Appraisal Practice). It is not to be construed as an appraisal and may not be used as such for any purpose.**

**Unless otherwise specifically agreed to in writing:**
**The intended purpose of this report is to assist the Clear Capital account holder in making decisions within the scope of applicable statutory and regulatory requirements and performing required due diligence. This document is provided solely for the use of the Clear Capital account holder and not any other party, is not intended as any guarantee of value and/or condition of the subject property and should not be relied on as such. In the event that this document is found to be defective, incorrect, negligently prepared or unfit for its authorized use, Clear Capital's sole liability shall be to promptly refund the total fee expended by the account holder for this report or to replace it at no charge to the account holder, but in no event shall Clear Capital be responsible to the account holder for any indirect or consequential damages whatsoever. This warranty is in lieu of all other warranties, express or implied, except where otherwise required by law. The account holder shall notify Clear Capital within thirty (30) days of this report's delivery to the account holder if it believes that this document is defective, incorrect, negligently prepared or unfit for its authorized use. Under no circumstances may Clear Capital forms or their contents be published, copied, replicated, or mimicked.**

**ClearCapital**®

**Invoice Number:** ▮▮▮▮
**Invoice Date: 11/06/2025**
**Due Date: 12/06/2025**

| Billed To: | Payable To: | Wire/ACH Information: |
|---|---|---|
| Fay Servicing (Non-ECOA)<br>Accounts Payable<br>440 South LaSalle, Suite 2000<br>Chicago, IL 60605<br>Phone: 312.257.3209 | ClearCapital.com, Inc.<br>Tax ID: 68-0474135<br>P.O. Box 885176<br>Los Angeles, CA 90088-5176<br>Email: accounting@clearcapital.com<br>Phone: 530.550.2500 | Bank Name: Umpqua Bank<br>Address: 500 Auburn Folsom Road<br>Auburn, CA 95603<br>Routing/ABA Number: ▮▮▮▮<br>Account Name: ClearCapital.com, Inc<br>Account Number: 991200338 |

|  | Tracking 1 | Loan Number | Customer Provided Unique Id | Trustor | Property | Price | Total |
|---|---|---|---|---|---|---|---|
| **Order: Tue Nov 04 25 5:00P - Wed Nov 05 25 9:00A Batch, Ordered on 11/05/2025 by Rachael Mweene (Order ID: 10631126: 1 Prop at $92)** | | | | | | | |
| 1) | ▮▮▮▮ | ▮▮▮▮ | | MARKOWITZ, LIBBY | 1226 S BEDFORD ST UNIT 502 LOS ANGELES CA 90035 | $92.00 | |
| | Drive-by BPO | | | | | | |

| | | |
|---|---|---|
| | *Order Subtotal:* | + $92.00 |
| | *State Sales Tax:* | $0.00 |
| | **Invoice Total:** | **$92.00** |

Exhibit 6

**Fill in this information to identify the case:**

Debtor name   **Marmar Bedford, LLC**

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)   **2:25-bk-20775-BB**

☐ Check if this is an amended filing

## Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property                    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

**3.**   **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*
Name of institution (bank or brokerage firm)   Type of account   Last 4 digits of account number

| 3.1. | **Genesis Bank** | **Business Checking** | 6517 | $14,914.03 |
|---|---|---|---|---|

**4.**   **Other cash equivalents** *(Identify all)*

**5.**   **Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| $14,914.03 |
|---|

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

■ No. Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

■ No. Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

**13. Does the debtor own any investments?**

■ No. Go to Part 5.

| Official Form 206A/B | Schedule A/B Assets - Real and Personal Property | page 1 |
|---|---|---|

| Debtor | **Marmar Bedford, LLC** | | Case number *(If known)* | **2:25-bk-20775-BB** |
|---|---|---|---|---|
| | Name | | | |

☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.
☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No. Go to Part 8.
☐ Yes Fill in the information below.

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No. Go to Part 9.
☐ Yes Fill in the information below.

| Part 9: | Real property |
|---|---|

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.
■ Yes Fill in the information below.

**55.    Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1.    **1226 S Bedford Street Unit 502 Los Angeles, CA 90036** | Fee simple | $0.00 | | $1,550,000.00 |
| 55.2.    **1226 S Bedford Street Unit 101 Los Angeles, CA 90036** | Fee simple | $0.00 | | $1,000,000.00 |

| Debtor | **Marmar Bedford, LLC** | | Case number *(If known)* | **2:25-bk-20775-BB** |
|---|---|---|---|---|
| | Name | | | |

| | | | | |
|---|---|---|---|---|
| 55.3. | **1226 S Bedford Street Unit 201 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,470,000.00 |
| 55.4. | **1226 S Bedford Street Unit 202 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,495,000.00 |
| 55.5. | **1226 S Bedford Street Unit 203 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,480,000.00 |
| 55.6. | **1226 S Bedford Street Unit 204 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,480,000.00 |
| 55.7. | **1226 S Bedford Street Unit 301 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,500,000.00 |
| 55.8. | **1226 S Bedford Street Unit 303 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,500,000.00 |
| 55.9. | **1226 S Bedford Street Unit 304 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,500,000.00 |
| 55.10. | **1226 S Bedford Street Unit 401 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,515,000.00 |
| 55.11. | **1226 S Bedford Street Unit 402 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,530,000.00 |
| 55.12. | **1226 S Bedford Street Unit 403 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,520,000.00 |

Debtor    **Marmar Bedford, LLC**                                    Case number *(If known)* **2:25-bk-20775-BB**
         Name

| | | | | |
|---|---|---|---|---|
| 55.13 · | **1226 S Bedford Street Unit 404 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,520,000.00 |
| 55.14 · | **1226 S Bedford Street Unit 501 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,525,000.00 |
| 55.15 · | **1226 S Bedford Street Unit 503 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,520,000.00 |
| 55.16 · | **1226 S Bedford Street Unit 504 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,535,000.00 |
| 55.17 · | **1226 S Bedford Strret Unit 102 Los Angeles, CA 90036** | Fee simple | $0.00 | Appraisal | $1,370,000.00 |
| 55.18 · | **1226 S Bedfor Street Unit 103 Los Angeles, CA 90036** | | $0.00 | $1,470,000.00 |
| 55.19 · | **1226 S Bedford Street Unit 104 Los Angeles, CA 90035** | Fee simple | $0.00 | $1,450,000.00 |
| 55.20 · | **1226 S Bedford Street Unit 302 Los Angeles, CA 90036** | Fee simple | $0.00 | $1,525,000.00 |

56.    **Total of Part 9.**
       Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.    | $29,455,000.00 |
       Copy the total to line 88.

57.    **Is a depreciation schedule available for any of the property listed in Part 9?**
       ■ No
       ☐ Yes

58.    **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
       ■ No
       ☐ Yes

**Part 10:**    Intangibles and intellectual property

59. **Does the debtor have any interests in intangibles or intellectual property?**

| Debtor | **Marmar Bedford, LLC** | Case number *(If known)* | **2:25-bk-20775-BB** |
|---|---|---|---|
| | Name | | |

■ **No.** Go to Part 11.
☐ **Yes** Fill in the information below.

| Part 11: | **All other assets** |
|---|---|

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ **No.** Go to Part 12.
■ **Yes** Fill in the information below.

|  | **Current value of debtor's interest** |
|---|---|

**71.** **Notes receivable**
Description (include name of obligor)

**72.** **Tax refunds and unused net operating losses (NOLs)**
Description (for example, federal, state, local)

**73.** **Interests in insurance policies or annuities**

**74.** **Causes of action against third parties (whether or not a lawsuit has been filed)**

**Insurance Claim amount requested to be determined.**                                    **Unknown**

| Nature of claim | **Water Damage** |
|---|---|
| Amount requested | **$0.00** |

**75.** **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

**76.** **Trusts, equitable or future interests in property**

**77.** **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

**78.** **Total of Part 11.**                                                              **$0.00**

Add lines 71 through 77. Copy the total to line 90.

**79.** **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
■ No
☐ Yes

| Debtor | **Marmar Bedford, LLC** | | Case number *(If known)* | **2:25-bk-20775-BB** |
|---|---|---|---|---|
| | Name | | | |

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $14,914.03 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9*..............................................................> | | $29,455,000.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $14,914.03 | + 91b.   $29,455,000.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $29,469,914.03 |

**Fill in this information to identify the case:**

Debtor name **Marmar Bedford, LLC**

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number (if known) **2:25-bk-20775-BB**

☐ Check if this is an amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property                          12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**List Creditors Who Have Secured Claims**

**2. List in alphabetical order all creditors** who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|

**2.1** **Evoque Lending**
Creditor's Name

**9440 Santa Monica Blvd., Suite 301**
**Beverly Hills, CA 90210**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**05/2025**
**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
☐ No
☑ Yes. Specify each creditor, including this creditor and its relative priority.
**1. Select Portfolio Servicing, Inc.**
**2. Evoque Lending**

**Describe debtor's property that is subject to a lien**
**1226 S Bedford Street Unit 104**
**Los Angeles, CA 90035**

**Describe the lien**
**2nd Deed of Trust**
**Is the creditor an insider or related party?**
☑ No
☐ Yes
**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Amount of claim: **$107,100.00**   Value of collateral: **$1,450,000.00**

**2.2** **Evoque Lending**
Creditor's Name

**9440 Santa Monica Blvd., Suite 301**
**Beverly Hills, CA 90210**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**02/2024**
**Last 4 digits of account number**

**Describe debtor's property that is subject to a lien**
**1226 S Bedford Street Unit 304**
**Los Angeles, CA 90036**

**Describe the lien**
**2nd Deed of Trust**
**Is the creditor an insider or related party?**
☑ No
☐ Yes
**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Amount of claim: **$107,100.00**   Value of collateral: **$1,500,000.00**

| Debtor | **Marmar Bedford, LLC** | Case number (if known) | **2:25-bk-20775-BB** |
|---|---|---|---|
| | Name | | |

**Do multiple creditors have an interest in the same property?**
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**1. Fay Servicing**
**2. Evoque Lending**

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.3 | **Evoque Lending** | Describe debtor's property that is subject to a lien | $107,033.33 | $1,515,000.00 |
|---|---|---|---|---|

Creditor's Name

**9440 Santa Monica Blvd., Suite 301**
**Beverly Hills, CA 90210**
Creditor's mailing address

**1226 S Bedford Street Unit 401**
**Los Angeles, CA 90036**

**Describe the lien**
**2nd Deed of Trust**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**05/2025**
**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**1. Selene**
**2. Evoque Lending**

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.4 | **Evoque Lending** | Describe debtor's property that is subject to a lien | $107,033.33 | $1,530,000.00 |
|---|---|---|---|---|

Creditor's Name

**9440 Santa Monica Blvd., Suite 301**
**Beverly Hills, CA 90210**
Creditor's mailing address

**1226 S Bedford Street Unit 402**
**Los Angeles, CA 90036**

**Describe the lien**
**2nd Deed of Trust**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**05/2025**
**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**1. Fay Servicing**
**2. Evoque Lending**

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.5 | **Evoque Lending** | Describe debtor's property that is subject to a lien | $107,033.33 | $1,520,000.00 |
|---|---|---|---|---|

---

| Official Form 206D | Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property** | page 2 of 13 |
|---|---|---|

| Debtor | **Marmar Bedford, LLC** | Case number (if known) | **2:25-bk-20775-BB** |
|---|---|---|---|
| | Name | | |

| | |
|---|---|
| Creditor's Name | **1226 S Bedford Street Unit 403**<br>**Los Angeles, CA 90036** |
| **9440 Santa Monica Blvd.,**<br>**Suite 301**<br>**Beverly Hills, CA 90210** | |
| Creditor's mailing address | **Describe the lien**<br>**2nd Deed of Trust** |
| | **Is the creditor an insider or related party?**<br>■ No<br>☐ Yes |
| Creditor's email address, if known | **Is anyone else liable on this claim?**<br>■ No |
| **Date debt was incurred**<br>**05/2025**<br>**Last 4 digits of account number** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Do multiple creditors have an**<br>**interest in the same property?**<br>☐ No<br>■ Yes. Specify each creditor,<br>including this creditor and its relative<br>priority.<br>**1. Selene**<br>**2. Evoque Lending** | **As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed |

| 2.6 | **Evoque Lending** | Describe debtor's property that is subject to a lien | $107,100.00 | $1,520,000.00 |
|---|---|---|---|---|

| | |
|---|---|
| Creditor's Name | **1226 S Bedford Street Unit 404**<br>**Los Angeles, CA 90036** |
| **9440 Santa Monica Blvd.,**<br>**Suite 301**<br>**Beverly Hills, CA 90210** | |
| Creditor's mailing address | **Describe the lien**<br>**2nd Deed of Trust** |
| | **Is the creditor an insider or related party?**<br>■ No<br>☐ Yes |
| Creditor's email address, if known | **Is anyone else liable on this claim?**<br>■ No |
| **Date debt was incurred**<br>**05/2025**<br>**Last 4 digits of account number** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Do multiple creditors have an**<br>**interest in the same property?**<br>☐ No<br>■ Yes. Specify each creditor,<br>including this creditor and its relative<br>priority.<br>**1. Selene**<br>**2. Evoque Lending** | **As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed |

| 2.7 | **Evoque Lending** | Describe debtor's property that is subject to a lien | $107,100.00 | $1,525,000.00 |
|---|---|---|---|---|

| | |
|---|---|
| Creditor's Name | **1226 S Bedford Street Unit 501**<br>**Los Angeles, CA 90036** |
| **9440 Santa Monica Blvd.,**<br>**Suite 301**<br>**Beverly Hills, CA 90210** | |
| Creditor's mailing address | **Describe the lien**<br>**2nd Deed of Trust** |
| | **Is the creditor an insider or related party?**<br>■ No<br>☐ Yes |
| Creditor's email address, if known | **Is anyone else liable on this claim?**<br>■ No |
| **Date debt was incurred**<br>**05/2025**<br>**Last 4 digits of account number** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |

Official Form 206D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 3 of 13

| Debtor | **Marmar Bedford, LLC** | Case number (if known) | **2:25-bk-20775-BB** |
|---|---|---|---|
| | Name | | |

Do multiple creditors have an interest in the same property?
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**1. Selene**
**2. Evoque Lending**

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.8 | **Evoque Lending** | | |
|---|---|---|---|
| | Creditor's Name | | |

**Describe debtor's property that is subject to a lien**                    $107,100.00    $1,550,000.00

**9440 Santa Monica Blvd., Suite 301 Beverly Hills, CA 90210**
Creditor's mailing address

1226 S Bedford Street Unit 502
Los Angeles, CA 90036

**Describe the lien**
**2nd Deed of Trust**
Is the creditor an insider or related party?
■ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Date debt was incurred**
**05/2025**
**Last 4 digits of account number**

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Do multiple creditors have an interest in the same property?
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**1. Fay Servicing**
**2. Evoque Lending**

---

| 2.9 | **Evoque Lending** | | |
|---|---|---|---|
| | Creditor's Name | | |

**Describe debtor's property that is subject to a lien**                    $107,100.00    $1,520,000.00

**9440 Santa Monica Blvd., Suite 301 Beverly Hills, CA 90210**
Creditor's mailing address

1226 S Bedford Street Unit 503
Los Angeles, CA 90036

**Describe the lien**
**2nd Deed of Trust**
Is the creditor an insider or related party?
■ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Date debt was incurred**
**05/2025**
**Last 4 digits of account number**

Do multiple creditors have an interest in the same property?
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**1. Selene**
**2. Evoque Lending**

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 0 | **Evoque Lending** | **Describe debtor's property that is subject to a lien** | $107,100.00 | $1,535,000.00 |
|---|---|---|---|---|

---

Debtor **Marmar Bedford, LLC**
Name

Case number (if known) **2:25-bk-20775-BB**

| | |
|---|---|
| Creditor's Name | **1226 S Bedford Street Unit 504**<br>**Los Angeles, CA 90036** |
| **9440 Santa Monica Blvd., Suite 301**<br>**Beverly Hills, CA 90210** | |
| Creditor's mailing address | Describe the lien<br>**2nd Deed of Trust** |
| | Is the creditor an insider or related party? |
| | ■ No |
| | ☐ Yes |
| Creditor's email address, if known | Is anyone else liable on this claim? |
| | ■ No |
| **Date debt was incurred** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **05/2025** | |
| **Last 4 digits of account number** | |
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:**<br>Check all that apply |
| ☐ No | ☐ Contingent |
| ■ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| **1. Select Portfolio Servicing, Inc.**<br>**2. Evoque Lending** | ☐ Disputed |

---

| 2.1<br>1 | **Fay Servicing** | Describe debtor's property that is subject to a lien | $928,026.80 | $1,550,000.00 |
|---|---|---|---|---|
| | Creditor's Name<br>**1601 LBJ Freeway Suite 150**<br>**Farmers Branch, TX 75234** | **1226 S Bedford Street Unit 502**<br>**Los Angeles, CA 90036** | | |
| | Creditor's mailing address | Describe the lien<br>**Deed of Trust** | | |
| | | Is the creditor an insider or related party? | | |
| | | ■ No | | |
| | | ☐ Yes | | |
| | Creditor's email address, if known | Is anyone else liable on this claim? | | |
| | | ■ No | | |
| | **Date debt was incurred**<br>**02/2024** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | **Last 4 digits of account number**<br>**7095** | | | |
| | **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:**<br>Check all that apply | | |
| | ☐ No | ☐ Contingent | | |
| | ■ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated | | |
| | **Specified on line 2.8** | ☐ Disputed | | |

---

| 2.1<br>2 | **Fay Servicing** | Describe debtor's property that is subject to a lien | $898,067.95 | $1,500,000.00 |
|---|---|---|---|---|
| | Creditor's Name<br>**1601 LBJ Freeway Suite 150**<br>**Farmers Branch, TX 75234** | **1226 S Bedford Street Unit 304**<br>**Los Angeles, CA 90036** | | |
| | Creditor's mailing address | Describe the lien<br>**Deed of Trust** | | |
| | | Is the creditor an insider or related party? | | |
| | | ■ No | | |
| | | ☐ Yes | | |
| | Creditor's email address, if known | Is anyone else liable on this claim? | | |
| | | ■ No | | |
| | **Date debt was incurred** | | | |

Official Form 206D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 5 of 13

| Debtor | **Marmar Bedford, LLC** | Case number (if known) | **2:25-bk-20775-BB** |
|---|---|---|---|
| | Name | | |

**02/2024**
**Last 4 digits of account number**
**7097**

**Do multiple creditors have an interest in the same property?**
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**Specified on line 2.2**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 3 | **Fay Servicing** | Describe debtor's property that is subject to a lien | $916,043.25 | $1,530,000.00 |
|---|---|---|---|---|

Creditor's Name

**1601 LBJ Freeway Suite 150**
**Farmers Branch, TX 75234**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**02/2024**
**Last 4 digits of account number**
**7096**

**Do multiple creditors have an interest in the same property?**
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**Specified on line 2.4**

Describe debtor's property that is subject to a lien
**1226 S Bedford Street Unit 402**
**Los Angeles, CA 90036**

**Describe the lien**
**Deed of Trust**
**Is the creditor an insider or related party?**
■ No
☐ Yes
**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 4 | **Fay Servicing** | Describe debtor's property that is subject to a lien | $913,047.37 | $1,525,000.00 |
|---|---|---|---|---|

Creditor's Name

**1601 LBJ Freeway Suite 150**
**Farmers Branch, TX 75234**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**02/2024**
**Last 4 digits of account number**
**7098**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**1226 S Bedford Street Unit 302**
**Los Angeles, CA 90036**

**Describe the lien**
**Deed of Trust**
**Is the creditor an insider or related party?**
■ No
☐ Yes
**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 5 | **Select Portfolio Servicing, Inc.** | Describe debtor's property that is subject to a lien | $953,435.77 | $1,470,000.00 |
|---|---|---|---|---|

| Debtor | **Marmar Bedford, LLC** | Case number (if known) | **2:25-bk-20775-BB** |
|---|---|---|---|
| | Name | | |

Creditor's Name
**Attn: Bankruptcy Dept.**
**P.O. Box 65250**
**Salt Lake City, UT 84165**

Creditor's mailing address

**1226 S Bedford Street Unit 201**
**Los Angeles, CA 90036**

Creditor's email address, if known

Describe the lien
**Deed of Trust**

Is the creditor an insider or related party?
■ No
☐ Yes

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Date debt was incurred
**02/2024**
Last 4 digits of account number
**5234**

Do multiple creditors have an interest in the same property?
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 6 | **Select Portfolio Servicing, Inc.** | Describe debtor's property that is subject to a lien | $919,736.84 | $1,535,000.00 |
|---|---|---|---|---|

Creditor's Name
**Attn: Bankruptcy Dept.**
**P.O. Box 65250**
**Salt Lake City, UT 84165**

Creditor's mailing address

**1226 S Bedford Street Unit 504**
**Los Angeles, CA 90036**

Creditor's email address, if known

Describe the lien
**Deed of Trust**

Is the creditor an insider or related party?
■ No
☐ Yes

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Date debt was incurred
**02/2024**
Last 4 digits of account number
**5283**

Do multiple creditors have an interest in the same property?
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**Specified on line 2.10**

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 7 | **Select Portfolio Servicing, Inc.** | Describe debtor's property that is subject to a lien | $940,493.42 | $1,450,000.00 |
|---|---|---|---|---|

Creditor's Name
**Attn: Bankruptcy**
**P.O. Box 65250**
**Salt Lake City, UT 84165**

Creditor's mailing address

**1226 S Bedford Street Unit 104**
**Los Angeles, CA 90035**

Creditor's email address, if known

Describe the lien
**Deed of Trust**

Is the creditor an insider or related party?
■ No
☐ Yes

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Date debt was incurred
**02/2024**
Last 4 digits of account number

---

Official Form 206D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 7 of 13

| Debtor | **Marmar Bedford, LLC** | | Case number (if known) | **2:25-bk-20775-BB** |
|---|---|---|---|---|
| | Name | | | |

5291

**Do multiple creditors have an interest in the same property?**

☐ No

☑ Yes. Specify each creditor, including this creditor and its relative priority.
**Specified on line 2.1**

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| | | | | |
|---|---|---|---|---|
| 2.1 8 | **Selene** | Describe debtor's property that is subject to a lien | **$977,557.09** | **$1,495,000.00** |
| | Creditor's Name | **1226 S Bedford Street Unit 202** | | |
| | **P. O. Box 8619** | **Los Angeles, CA 90036** | | |
| | **Philadelphia, PA 19101-8619** | | | |

**Describe the lien**
**Deed of Trust**

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**02/2024**

**Last 4 digits of account number**
**7418**

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Do multiple creditors have an interest in the same property?**

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

---

| | | | | |
|---|---|---|---|---|
| 2.1 9 | **Selene** | Describe debtor's property that is subject to a lien | **$974,111.99** | **$1,480,000.00** |
| | Creditor's Name | **1226 S Bedford Street Unit 203** | | |
| | **P. O. Box 8619** | **Los Angeles, CA 90036** | | |
| | **Philadelphia, PA 19101-8619** | | | |

**Describe the lien**
**Deed of Trust**

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**02/2024**

**Last 4 digits of account number**
**7419**

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Do multiple creditors have an interest in the same property?**

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

---

| | | | | |
|---|---|---|---|---|
| 2.2 0 | **Selene** | Describe debtor's property that is subject to a lien | **$960,638.63** | **$1,480,000.00** |

---

| Debtor | **Marmar Bedford, LLC** | | Case number (if known) | **2:25-bk-20775-BB** |
|---|---|---|---|---|
| | Name | | | |

| Creditor's Name | | |
|---|---|---|
| **P. O. Box 8619** | **1226 S Bedford Street Unit 204** | |
| **Philadelphia, PA** | **Los Angeles, CA 90036** | |
| **19101-8619** | | |

Creditor's mailing address

**Describe the lien**

**Deed of Trust**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**02/2024**

**Last 4 digits of account number**

**7420**

**Do multiple creditors have an interest in the same property?**

■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.2 1 | **Selene** | Describe debtor's property that is subject to a lien | $971,631.12 | $1,500,000.00 |
|---|---|---|---|---|
| | Creditor's Name | **1226 S Bedford Street Unit 301** | | |
| | **P. O. Box 8619** | **Los Angeles, CA 90036** | | |
| | **Philadelphia, PA** | | | |
| | **19101-8619** | | | |

Creditor's mailing address

**Describe the lien**

**Deed of Trust**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**02/2024**

**Last 4 digits of account number**

**7421**

**Do multiple creditors have an interest in the same property?**

■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.2 2 | **Selene** | Describe debtor's property that is subject to a lien | $983,679.75 | $1,500,000.00 |
|---|---|---|---|---|
| | Creditor's Name | **1226 S Bedford Street Unit 303** | | |
| | **P. O. Box 8619** | **Los Angeles, CA 90036** | | |
| | **Philadelphia, PA** | | | |
| | **19101-8619** | | | |

Creditor's mailing address

**Describe the lien**

**Deed of Trust**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**02/2024**

**Last 4 digits of account number**

---

| Debtor | **Marmar Bedford, LLC** | Case number (if known) | **2:25-bk-20775-BB** |
|---|---|---|---|
| | Name | | |

7422

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

---

| 2.2 3 | **Selene** | Describe debtor's property that is subject to a lien | $994,803.56 | $1,515,000.00 |
|---|---|---|---|---|
| | Creditor's Name | **1226 S Bedford Street Unit 401** | | |
| | **P. O. Box 8619** | **Los Angeles, CA 90036** | | |
| | **Philadelphia, PA** | | | |
| | **19101-8619** | | | |
| | Creditor's mailing address | Describe the lien | | |
| | | **Deed of Trust** | | |
| | | Is the creditor an insider or related party? | | |
| | | ■ No | | |
| | Creditor's email address, if known | ☐ Yes | | |
| | | Is anyone else liable on this claim? | | |
| | **Date debt was incurred** | ■ No | | |
| | **02/2024** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | **Last 4 digits of account number** | | | |
| | **7424** | | | |
| | Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply | | |
| | ☐ No | ☐ Contingent | | |
| | ■ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | **Specified on line 2.3** | | | |

---

| 2.2 4 | **Selene** | Describe debtor's property that is subject to a lien | $989,806.07 | $1,520,000.00 |
|---|---|---|---|---|
| | Creditor's Name | **1226 S Bedford Street Unit 403** | | |
| | **P. O. Box 8619** | **Los Angeles, CA 90036** | | |
| | **Philadelphia, PA** | | | |
| | **19101-8619** | | | |
| | Creditor's mailing address | Describe the lien | | |
| | | **Deed of Trust** | | |
| | | Is the creditor an insider or related party? | | |
| | | ■ No | | |
| | Creditor's email address, if known | ☐ Yes | | |
| | | Is anyone else liable on this claim? | | |
| | **Date debt was incurred** | ■ No | | |
| | **02/2024** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | **Last 4 digits of account number** | | | |
| | **7425** | | | |
| | Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply | | |
| | ☐ No | ☐ Contingent | | |
| | ■ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | **Specified on line 2.5** | | | |

---

| 2.2 5 | **Selene** | Describe debtor's property that is subject to a lien | $991,854.71 | $1,520,000.00 |
|---|---|---|---|---|

---

| Debtor | **Marmar Bedford, LLC** | | Case number *(if known)* | **2:25-bk-20775-BB** |
| --- | --- | --- | --- | --- |
| | Name | | | |

Creditor's Name

**P. O. Box 8619
Philadelphia, PA
19101-8619**

**1226 S Bedford Street Unit 404
Los Angeles, CA 90036**

Creditor's mailing address

**Describe the lien**

**Deed of Trust**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**02/2024**

**Last 4 digits of account number**

**7426**

**As of the petition filing date, the claim is:**
Check all that apply

**Do multiple creditors have an
interest in the same property?**

☐ No

☐ Contingent
☐ Unliquidated
☐ Disputed

■ Yes. Specify each creditor,
including this creditor and its relative
priority.

**Specified on line 2.6**

---

**2.2
6**

**Selene**

Creditor's Name

**P. O. Box 8619
Philadelphia, PA
19101-8619**

Describe debtor's property that is subject to a lien
**1226 S Bedford Street Unit 501
Los Angeles, CA 90036**

$994,648.16          $1,525,000.00

Creditor's mailing address

**Describe the lien**

**Deed of Trust**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**02/2024**

**Last 4 digits of account number**

**7427**

**As of the petition filing date, the claim is:**
Check all that apply

**Do multiple creditors have an
interest in the same property?**

☐ No

☐ Contingent
☐ Unliquidated
☐ Disputed

■ Yes. Specify each creditor,
including this creditor and its relative
priority.

**Specified on line 2.7**

---

**2.2
7**

**Selene**

Creditor's Name

**P. O. Box 8619
Philadelphia, PA
19101-8619**

Describe debtor's property that is subject to a lien
**1226 S Bedford Street Unit 503
Los Angeles, CA 90036**

$991,697.02          $1,520,000.00

Creditor's mailing address

**Describe the lien**

**Deed of Trust**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**02/2024**

**Last 4 digits of account number**

---

| Debtor | **Marmar Bedford, LLC** | | Case number (if known) | **2:25-bk-20775-BB** |
|--------|------------------|--|--|--|
| | Name | | | |

**7428**

**Do multiple creditors have an interest in the same property?**

☐ No

■ Yes. Specify each creditor, including this creditor and its relative priority.

**Specified on line 2.9**

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.2 8 | **Shellpoint Mortgage Servicing** | Describe debtor's property that is subject to a lien | $644,600.13 | $1,000,000.00 |
|-------|-----|-----|-----|-----|

Creditor's Name

**P.O. Box 650840**
**Dallas, TX 75265-0840**

Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**1226 S Bedford Street Unit 101**
**Los Angeles, CA 90036**

**Describe the lien**
**Deed of Trust**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Date debt was incurred**
**02/2024**

**Last 4 digits of account number**
**2362**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.2 9 | **Shellpoint Mortgage Servicing** | Describe debtor's property that is subject to a lien | $888,535.64 | $1,370,000.00 |
|-------|-----|-----|-----|-----|

Creditor's Name

**P.O. Box 650840**
**Dallas, TX 75265-0840**

Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**1226 S Bedford Strret Unit 102**
**Los Angeles, CA 90036**

**Describe the lien**
**Deed of Trust**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Date debt was incurred**
**02/2024**

**Last 4 digits of account number**
**2370**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.3 0 | **Shellpoint Mortgage Servicing** | Describe debtor's property that is subject to a lien | $953,428.50 | $1,470,000.00 |
|-------|-----|-----|-----|-----|

| Debtor | **Marmar Bedford, LLC** | | Case number (if known) | **2:25-bk-20775-BB** |
|---|---|---|---|---|
| | Name | | | |

| Creditor's Name | | |
|---|---|---|
| **P.O. Box 650840** | **1226 S Bedfor Street Unit 103** | |
| **Dallas, TX 75265-0840** | **Los Angeles, CA 90036** | |
| Creditor's mailing address | | |
| | Describe the lien | |
| | **Deed of Trust** | |
| | **Is the creditor an insider or related party?** | |
| | ■ No | |
| Creditor's email address, if known | ☐ Yes | |
| | **Is anyone else liable on this claim?** | |
| **Date debt was incurred** | ■ No | |
| **02/2024** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | |
| **Last 4 digits of account number** | | |
| **2388** | **As of the petition filing date, the claim is:** | |
| **Do multiple creditors have an interest in the same property?** | Check all that apply | |
| ■ No | ☐ Contingent | |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated | |
| | ☐ Disputed | |

| | | |
|---|---|---|
| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | $19,856,643.76 |

**Part 2:**    **List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

| | | |
|---|---|---|
| Official Form 206D | Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property** | page 13 of 13 |

Exhibit 7

PAYOFF STATEMENT


Fay Servicing, LLC
1601 LBJ Freeway, Ste 150
Farmers Branch, TX 75234
800-495-7166


December 19, 2025


TO:
Marmar Bedford Llc
Libby F Markowitz
493 S Robertson Bouleva
Beverly Hills, CA 90211


                                        Loan No:███████████

Loan Type: Commercial
                                        Property Address:
                                        1226 S Bedford St Unit
                                        Los Angeles CA 90035



        *   ONLY CERTIFIED FUNDS WILL BE ACCEPTED FOR THE  *
        *   PAYOFF SHOWN BELOW ON THE CAPTIONED MORTGAGE.   *


These figures are good through December 31, 2025
This loan is due for the April 01, 2025 payment
The current total unpaid Principal Balance is        $     928,026.80
The current total Principal Deferment Amount                      .00
Interest at  9.87500%                                       76,368.90
Prepayment Penalty/Premium                                  46,401.34
Escrow/Impound Overdraft                                    96,839.89
Suspense Balance                                              -192.50
Unpaid Late Charges                                          1,392.42
Recoverable Corporate Advances                              10,100.04
Rehab Holdback                                                    .00
Exit/Draw Fee                                                    .00
Cema Assignment Fee                                              .00
Addl Interest Due                                               .00
Default Interest                                                .00
Payoff Interest Due                                             .00
Interest On Esc Adv                                             .00
  * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $   1,158,936.89
Funds received on or after December 31, 2025 will require an additional
$ 254.56 interest per Day.




Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due.  A late charge of $    464.14 will be
assessed  15 days after a current payment is due and should be added
to the payoff total if received after that time.

Please remit payoff checks to the address below:

Attention: Payoff Processing
1601 LBJ Freeway, Ste 150
Farmers Branch, TX 75234

Failure to send checks to the above address may result in the accrual of
additional interest. Issuance of this statement does not suspend the
contract requirement to make the mortgage payments when due.

Wiring Instructions:

Below are wiring instruction for payoffs to be sent to Fay Servicing, LLC

Bank Name: Fifth Third Bank
ABA Number: ███████████
Account Number: ████████████████

Please note: Wires are processed in accordance with Federal Business Days
which are Monday through Friday and exclude Federal Holidays. Wires received
by 3:00 pm CST on these business days will be processed same day. Wires
received after 3:00 P.M.CST are subject to process on the following day
business day. Please be sure to include the borrower's loan number, full
name, and property address to avoid delays. Fay Servicing reserves the
right to reject any wire received that we are unable to identify.

Payoff Statement Disclaimer:

If funds received are insufficient to pay off the account, for any reason
including, but limited to, error in calculation, NSF, or additonal
escrow disbursement and/or adjustments (including fees & costs),
Fay Servicing reserves the right to decline to pay the account in full.
In addition, any and all accrued interest will be due at the time of
payoff.
Notice to borrowers with adjustable rate mortgages: The amount of calculated
interest which is displayed on the payoff statement represents the interest
rate in effect on the account at the time the statement was generated.
Please note that the rate of interest displayed is that which was in effect
as of the loan's due date. Payoff funds will be applied based on the most
recent interest rate in effect at the time the payoff statement was
generated.

Important Bankruptcy Notice:
If you have been discharged from personal liability on the mortgage because
of bankruptcy proceedings and have not reaffirmed the mortgage, or if you
are the subject of a pending bankruptcy proceeding, this letter is not an
attempt to collect a debt from you but merely provides informational
notice regarding the status of the account. If you are represented by an
attorney with respect to your mortgage, please forward this document
to your attorney. If the property is sold, please provide the sellers
forwarding address.

*If your mailing address differs from the subject property address,
please contact your Account Manager to update your mailing address*

Fay Servicing, LLC is a debt collector, and information you provide to us
will be used for that purpose.

Our office hours are Monday - Thursday 8 a.m. - 7 p.m., Friday
8 a.m. - 5 p.m., and Saturday 9 a.m. - 12 p.m. CST. NC Residents:
Fay Servicing, LLC NC Permit Number 112302, 1601 LBJ Highway Suite 150,
Farmers Branch, TX 75234.

Exhibit 8



**This page is part of your document - DO NOT DISCARD**



## 20250491718



**Pages:**
**0007**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/22/25 AT 08:00AM**

| | |
|---|---|
| FEES: | 44.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 119.00 |



**L E A D S H E E T**



**202507220300028**

**00025667967**



**SEQ:**
**02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E656375

2592845CAD_Package_1_

RECORDING REQUESTED BY:
**WFG National Title Insurance**
**Company**
**Prestige Default Services, LLC**

AND WHEN RECORDED MAIL TO:
**Prestige Default Services, LLC**
**1920 Old Tustin Ave.**
**Santa Ana, California 92705**
**Phone: 949-427-2010**

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: 25-15277          Loan No.: ******7095          APN: 4332-022-047
                                                        AKA: 4332-022-066

Order# 2592845CAD

**1226 S BEDFORD STREET UNIT 502, LOS ANGELES, California 90035**
**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF**
**TRUST**

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good standing
by paying all of your past due payments plus permitted costs and expenses within the time
permitted by law for reinstatement of your account, which is normally five business days prior to
the date set for the sale of your property. No sale date may be set until approximately 90 days
from the date this notice of default may be recorded (which date of recordation appears on this
notice).

This amount is **$66,458.81** as of **7/19/2025**, and will increase until your account becomes
current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and
taxes) required by your note and deed of trust or mortgage. If you fail to make future payments
on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations
as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist
that you do so in order to reinstate your account in good standing. In addition, the beneficiary or
mortgagee may require as a condition of reinstatement that you provide reliable written evidence
that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of
the entire amount you must pay. You may not have to pay the entire unpaid portion of your
account, even though full payment was demanded, but you must pay all amounts in default at the
time payment is made. However, you and your beneficiary or mortgagee may mutually agree in
writing prior to the time the notice of sale is posted (which may not be earlier than three months
after this notice of default is recorded) to, among other things, (1) provide additional time in
which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of
payments in order to cure your default; or both (1) and (2).

TS No.: 25-15277      Loan No.: ******7095

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**U.S. Bank Trust Company, National Association, not in its individual capacity, but solely as trustee on behalf of PRPM 2024-NQM2 Trust
c/o Fay Servicing, LLC
1601 LBJ Freeway, Suite 150
Farmers Branch, TX 75234**

**Telephone: 1 (800) 495-7166**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.** NOTICE IS HEREBY GIVEN:  That **Prestige Default Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a DEED OF TRUST (the "Deed of Trust") dated **2/14/2024**, executed by **MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC ITS SUCCESSORS AND ASSIGNS**, as beneficiary, recorded **2/22/2024**, as Instrument No. **20240115952**, of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as: PLEASE SEE EXHIBIT A

Said obligations include 1 **NOTE(S) FOR THE ORIGINAL** sum of **$930,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by U.S. Bank Trust Company, National Association, not in its individual capacity, but solely as trustee on behalf of PRPM 2024-NQM2 Trust, the Beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The installment of principal and interest and escrow amounts, if applicable, which became due on 4/1/2025, and all subsequent installments of principal and interest and escrow amounts through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premium, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect the preserve its security, all of which must be paid as a condition of reinstatement including all sums that shall accrue through reinstatement or payoff.**

TS No.: **25-15277**          Loan No.: **\*\*\*\*\*\*7095**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Nothing in this Notice of Default should be construed as a waiver of any fees or other amounts owing to the Beneficiary pursuant to the terms of the loan documents.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary has elected to conduct a unified foreclosure sale pursuant to the provisions of California Commercial Code Section 9604(a)(1)(B) and to include in the non-judicial foreclosure of the estate described in this Notice of Default all the personal property and fixtures described in the DEED OF TRUST and in any other instruments in favor of the Beneficiary.

The Beneficiary reserves the right to revoke its election as to some or all said personal property and/or fixtures, or to add additional personal property and/or fixtures to the election herein expressed, at the Beneficiary's sole election, from time to time and at any time until the consummation of the trustee's sale to be conducted pursuant to the Deed of Trust and this Notice of Default.

**Dated: 7/19/2025**

                    **Prestige Default Services**

                    BY: _____
                    **Tina Suihkonen Vice, President of Operations**

Prestige Default Services, LLC MAY BE CONSIDERED A DEBT COLLECTOR AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE.

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

AN UNDIVIDED ONE-TWENTIETH (1/20TH) INTEREST IN THE COMMON AREA OF LOT 1 OF TRACT NO. 74076, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 1438, PAGES 30 THROUGH 32, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND AS SHOWN AND DEFINED IN THE CONDOMINIUM PLAN RECORDED JANUARY 13, 2023 AS INSTRUMENT NO. 20230028373, OF OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 2:

UNIT NO. 502 AS SHOWN AND DEFINED IN THE CONDOMINIUM PLAN MOVE MENTIONED.

NOTE:  For information purposes only, for which the Company assumes no liability for any inaccuracies or omissions, the purported street address of said land as determined from the latest County Assessor's Roll is:

1226 South Bedford St Unit 502, Los Angeles, CA  90035

BENEFICIARY DECLARATION OF COMPLIANCE WITH (OR EXCEPTION FROM) CIVIL CODE

SECTION 2923.5 AND AUTHORIZATION OF AGENT (FOR NOTICE OF DEFAULT)

Prestige Default Services, LLC
1920 Old Tustin Ave.
Santa Ana, California 92705

- **Borrower:**   MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
- **Beneficiary:**   U.S. Bank Trust Company, National Association, not in its individual capacity, but solely as trustee on behalf of PRPM 2024-NQM2 Trust
- **Property:**   1226 S BEDFORD STREET UNIT 502
  LOS ANGELES, California 90035
- **Loan No:**   ******7095
- **TS No:**   25-15277

The undersigned beneficiary, or authorized agent for the beneficiary, hereby represents and declares:

[ ] The beneficiary or beneficiary's authorized agent has contacted the borrower pursuant to, and has complied with, Civil Code Section 2923.5(a) (contact provision to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure"). State the date "contact" with the borrower(s) was accomplished pursuant to Civil Code Section 2923.5(a)(2): _____, 20_____.

[ ] The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required by California Civil Code Section 2923.5(e) and, after waiting two (2) weeks after the telephone call requirements of Civil Code 2923.5(e)(2)(A) were satisfied, the beneficiary or the beneficiary's authorized agent sent to the borrower(s), by certified mail, return receipt requested, the letter required by Civil Code Section 2923.5(e)(3), which was mailed on _____, 20_____. (Date of mailing)

[ ] Pursuant to Civil Code Section 2920.5(c)(2)(A), the borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trustee. The surrender letter was received on _____(date); the keys were received on _____. (date).

[ ] Pursuant to Civil Code Section 2920.5(c)(2)(B), the beneficiary or beneficiary's authorized agent has evidence in its file, and reasonably believes, that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

[ ] Pursuant to Civil Code Section 2920.5(c)(2)(C), the beneficiary or beneficiary's authorized agent has verified information that on or before the date of this declaration, the borrower(s) has filed for bankruptcy and the proceedings have not been finalized. "Finalized" is not defined by 2920.5(c)(2)(C). For purposes of this Code section, trustee, foreclosure agent and/or their authorized agent define the term as either (1) an order entered on the court's docket closing the file by the court; or (2) an order entered on the court's docket dismissing the bankruptcy case. If the beneficiary or the beneficiary's agent interprets "finalized" in another manner, please state the basis upon which the beneficiary believes that the bankruptcy has not been "finalized": _____.

[✓] The provisions of Civil Code 2923.5 do not apply, because [ ] the property is NOT THE BORROWER'S PRINCIPAL RESIDENCE; or [✓] the property is COMMERCIAL PROPERTY.

[ ] The loan is not secured by a first mortgage or first deed of trust that encumbers real property described in Civil Code Section 2924.15(a)

[ ] The requirements of Cal. Civil Code §2923.55 do not apply because the loan is not secured by a first lien mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

[ ] Pursuant to California Civil Code §3273.10 the mortgage servicer declares it has denied a forbearance request, during the effective time period of 9-1-2020 and 4-1-2021. A copy of the written denial notice(s) is attached. A forbearance [ ] was [ ] was not subsequently provided.

Pursuant to California Civil Code 2923.5(2)(b) the mortgage servicer declares it has notified the borrower during the initial contact required pursuant to 2923.5(2) subparagraph (A) that a third party, such as a family member, HUD-certified housing counselor, or attorney, may record a request to receive copies of any notice of default and notice of sale pursuant to the process described in Section 2924b and that receiving a copy of these documents may allow the third party to assist the borrower in avoiding foreclosure. [ ] Compliance met [ ] 2923.5 does not apply as stated above.

The undersigned authorized the trustee, foreclosure agent and/or their authorized agent to sign, on behalf of the beneficiary/authorized agent, the notice of default containing the declaration required pursuant to Civil Code Section 2923.5(b).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: _____ JUL 0 8 2025 _____

Fay Servicing, LLC, as attorney in fact for
U.S. Bank Trust Company, National Association, not in its individual capacity, but solely as trustee on behalf of PRPM 2024-NQM2 Trust

By: _____

Print Name: _____ Eric R. Wilson _____

Its: _____ Assistant Secretary _____

Exhibit 9



**This page is part of your document - DO NOT DISCARD**

# 20250785162





**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/10/25 AT 08:00AM**

| | |
|---|---|
| FEES: | 32.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 107.00 |



**L E A D S H E E T**



202511100280013

00025993185



**SEQ:
01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E705066

2592845CAD_Package_2

RECORDING REQUESTED BY
**PRESTIGE DEFAULT SERVICES, LLC**

AND WHEN RECORDED MAIL TO:
**Prestige Default Services, LLC**
**1920 Old Tustin Ave.**
**Santa Ana, California 92705**

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: **25-15277**    Loan No.: **\*\*\*\*\*\*7095**    APN: **4332-022-047 AKA 4332-022-066**
Order Number: **2592845CAD**

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 2/14/2024. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On **12/3/2025 at 11:00 AM**, Prestige Default Services, LLC, as duly appointed Trustee under and pursuant that certain DEED OF TRUST dated **2/14/2024** ("Deed of Trust") recorded on **2/22/2024, as Instrument No. 20240115952,**, of Official Records in the Office of the Recorder of **Los Angeles** County, California, executed by **MARMAR BEDFORD LLC, A CALIFORNIA LIMITED LIABILITY COMPANY** ("Trustor"), as trustor, to secure obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC ITS SUCCESSORS AND ASSIGNS**, as beneficiary.

WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by Cash, a Cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). **Checks must be made payable to Prestige Default Services.** At: **Behind the fountain located in Civic Center Plaza, 400 Civic Center Plaza, Pomona, CA 91766**, all right, title and interest conveyed to and now held by it under the DEED OF TRUST in the property situated in said County, California, describing the land therein: As more fully described on said deed of trust.

**A.P.N.: 4332-022-047 AKA 4332-022-066**

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be: **1226 S BEDFORD STREET UNIT 502, LOS ANGELES, California 90035**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warrant, expressed or implied, regarding title, possession or encumbrances, to pay the remaining principal sum of the note(s) secured by said DEED OF TRUST, with interest (including, without limitation, default interest) and late charges thereon, the prepayment premium, legal fees and other costs, fees, expenses and charges, and advances, and interest thereon, and the fees, charges and expenses of the undersigned trustee ("Trustee") as provided in the note, loan agreement and other loan documents secured by the DEED OF TRUST, at the time of the initial publication of this Notice of Trustee's Sale

T.S. No.: **25-15277**        Loan No.: ******7095
APN: **4332-022-047 AKA 4332-022-066**

reasonably estimated (Estimated as of 11-26-25) **$1,139,698.57**. The amount may be greater on the day of sale as accrued interest, costs and fees, and any additional advances, will increase the figure prior to sale.

The current beneficiary under the DEED OF TRUST (the "Beneficiary") hereby elects to conduct a unified foreclosure sale pursuant to the provisions of California Commercial Code Section 9604(a)(1)(B) and to include in the non-judicial foreclosure of the estate described in this Notice of Unified Trustee's Sale all of the personal property and fixtures described in the DEED OF TRUST. The Beneficiary reserves the right to revoke its election as to some or all of said personal property and/or fixtures, or to add additional personal property and/or fixtures to the election herein expressed, at the Beneficiary's sole election, from time to time and at any time until the consummation of the trustee's sale to be conducted pursuant to the DEED OF TRUST and this Notice of Unified Trustee's Sale. The personal property which was given as security for trustor's obligation as described in the DEED OF TRUST. No warranty is made that any or all of the personal property and/or fixtures still exists or is available for the successful bidder and no warranty is made as to the condition of any of the personal property and/or fixtures, which shall be sold "as is" "where is".

The Beneficiary heretofore executed and delivered to the undersigned, a written Declaration of Default and Demand for Sale, and a Written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located, and more than three months have elapsed since such recordation.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (949) 776-4697 or visit this internet website https://prestigepostandpub.com, using the file number assigned to this case 25-15277. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the internet website. The best way to verify postponement information is to attend the scheduled sale.

Date: 11/4/2025                     **Prestige Default Services, LLC**
                                    **1920 Old Tustin Ave.**
                                    **Santa Ana, California 92705**
                                    **Questions: 949-427-2010**
                                    **Sale Line: (949) 776-4697**

                                    **Martha Nuno, Senior Foreclosure Coordinator**

Exhibit 10

**2022**    **2022**

# ANNUAL SECURED PROPERTY TAX BILL

CITIES, COUNTY, SCHOOLS AND ALL OTHER TAXING AGENCIES IN LOS ANGELES COUNTY

## SECURED PROPERTY TAX FOR FISCAL YEAR JULY 1, 2022 TO JUNE 30, 2023

KEITH KNOX, TREASURER AND TAX COLLECTOR

FOR ASSISTANCE, CALL 1(213) 974-2111 OR 1(888) 807-2111, ON THE WEB AT  propertytax.lacounty.gov

ASSESSOR'S ID. NO. YR SEQ   CK

**PROPERTY IDENTIFICATION**
ASSESSOR'S ID. NO.: ▮▮▮▮▮▮▮ 000

OWNER OF RECORD AS OF JANUARY 1, 2022
SAME AS BELOW

**MAILING ADDRESS**
0046449-0046449 PDFE 001 1234-- 455043
l¹¹¹¹ll¹¹ll¹¹¹lll¹¹lll¹¹l¹lll¹l¹¹l¹¹l¹¹l¹¹llull¹l¹l¹ll¹¹ll¹ll¹
ASSESSEE NAME AND ADDRESS ARE NOT
AVAILABLE ONLINE PER CA GOV CODE
§6254.21

*Save Money – Save Time – Pay Online*
*ttc.lacounty.gov*
**Electronic Payment Information**
**(Required for Online and Telephone Payments)**
ID#:19 4332 022 047 9 YEAR:22 SEQUENCE:000 4
**Personal Identification Number (PIN)**
**PIN:**   XRACKE

**SPECIAL INFORMATION**

| DETAIL OF TAXES DUE FOR ▮▮▮▮ | | **22 000** | **04** |
|---|---|---|---|
| **AGENCY** | **AGENCY PHONE NO.** | **RATE** | **AMOUNT** |
| GENERAL TAX LEVY | | | |
| ALL AGENCIES | | 1.000000 | $ 56,245.19 |
| VOTED INDEBTEDNESS | | | |
| CITY-LOS ANGELES | | .016066 | $ 903.63 |
| METRO WATER DIST | | .003500 | 196.86 |
| COMMNTY COLLEGE | | .024882 | 1,399.49 |
| UNIFIED SCHOOLS | | .121072 | 6,809.72 |
| DIRECT ASSESSMENTS | | | |
| SAFE CLEAN WATER | (833) 275-7297 | $ | 280.37 |
| HEALTH LIC FEES | (626) 430-5350 | | 355.00 |
| LA STORMWATER | (213) 485-2464 | | 90.70 |
| FLOOD CONTROL | (626) 979-5498 | | 113.77 |
| CITY LT MAINT | (213) 847-1821 | | 106.13 |
| LA WEST MOSQ AB | (310) 915-7370 | | 14.65 |
| LACITY PARK DIST | (213) 485-4795 | | 8.91 |

**PROPERTY LOCATION AND/OR PROPERTY DESCRIPTION**
1220 S BEDFORD ST       LOS ANGELE
TR=6749 LOTS 22 AND 23 BLK 3

**ROLL YEAR 22-23**
LAND
IMPROVEMENTS

**VALUATION INFORMATION**
**CURRENT ASSESSED VALUE**     **TAXABLE VALUE**
1,856,639          1,856,639
3,767,880 B        3,767,880

**ASSESSOR'S REGIONAL OFFICE**
REGION #07 INDEX:         TRA:00067
WEST DISTRICT OFFICE
500 W TEMPLE STREET #183-19
LOS ANGELES CA 90012
(310)665-5300

ACCT. NO.:     PRINT NO.: 286449 BILL ID.:

TOTAL                          5,624,519
LESS EXEMPTION:

NET TAXABLE VALUE              5,624,519

| 1ST | $33,262.22 | 2ND | $33,262.20 | 1ST | $66,524.42 |
|---|---|---|---|---|---|
| | DUE NOVEMBER 1, 2022 | | DUE FEBRUARY 1, 2023 | + | IF PAYING BOTH BY DECEMBER 10, 2022 |
| | (After December 10, 2022, add 10% penalty) | | (After April 10, 2023, add 10% penalty and $10 cost) | 2ND | (Include 1st & 2nd stubs if paying by mail) |

ANY RETURNED PAYMENT MAY BE SUBJECT TO A FEE UP TO $50.00.     SEE REVERSE SIDE FOR MORE INFORMATION.

---

DETACH AND MAIL THIS STUB WITH YOUR 2ND INSTALLMENT PAYMENT
DO NOT INCLUDE CASH OR CORRESPONDENCE WITH YOUR PAYMENT
DO NOT STAPLE. TAPE OR CLIP PAYMENT STUB OR CHECK

**ANNUAL**     **2022**

ASSESSEE NAME AND ADDRESS ARE NOT
AVAILABLE ONLINE PER CA GOV CODE
§6254.21

**FOR MAILING ADDRESS CHANGE**
PLEASE MARK BOX BELOW AND
COMPLETE FORM ON REVERSE SIDE
OF THIS PAYMENT COUPON.

☐

2ND Installment Taxes due Feb. 1 and must ----------->
be received or USPS Postmarked by April 10
*If received or postmarked after, include
10% penalty and $10 cost*

**MAKE PAYMENT PAYABLE TO:**
Please write the ASSESSOR'S ID. NO.
on the lower left corner of your payment.
74068

ASSESSOR'S ID. NO.  YR SEQ   CK      PK
▮▮▮▮▮▮ 047 22 000   04        2

2ND INSTALLMENT DUE        INDICATE AMOUNT PAID
$33,262.20

l¹¹l¹ll¹lll¹¹l¹l¹lll¹lll¹l¹l¹llll¹l¹lll¹¹l¹¹ll¹l¹¹ll¹¹l¹l¹
LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

06820410

---

DETACH AND MAIL THIS STUB WITH YOUR 1ST INSTALLMENT PAYMENT
DO NOT INCLUDE CASH OR CORRESPONDENCE WITH YOUR PAYMENT
DO NOT STAPLE. TAPE OR CLIP PAYMENT STUB OR CHECK

**ANNUAL**     **2022**

ASSESSEE NAME AND ADDRESS ARE NOT
AVAILABLE ONLINE PER CA GOV CODE
§6254.21

**FOR MAILING ADDRESS CHANGE**
PLEASE MARK BOX BELOW AND
COMPLETE FORM ON REVERSE SIDE
OF THIS PAYMENT COUPON.

☐

1ST Installment Taxes due Nov. 1 and must ----------->
be received or USPS Postmarked by December 10
*If received or postmarked after, include
10% penalty*

**MAKE PAYMENT PAYABLE TO:**
Please write the ASSESSOR'S ID. NO.
on the lower left corner of your payment.
64060

ASSESSOR'S ID. NO.  YR SEQ   CK      PK
▮▮▮▮▮▮ 047 22 000   04        1

1ST INSTALLMENT DUE        INDICATE AMOUNT PAID
$33,262.22

l¹¹l¹ll¹lll¹¹l¹l¹lll¹lll¹l¹l¹llll¹l¹lll¹¹l¹¹ll¹l¹¹ll¹¹l¹l¹
LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

6011212

**1ST**

**2023**          **2023**

# ANNUAL SECURED PROPERTY TAX BILL
CITIES, COUNTY, SCHOOLS AND ALL OTHER TAXING AGENCIES IN LOS ANGELES COUNTY

## SECURED PROPERTY TAX FOR FISCAL YEAR JULY 1, 2023 TO JUNE 30, 2024
KEITH KNOX, TREASURER AND TAX COLLECTOR

FOR ASSISTANCE, CALL 1(213) 974-2111 OR 1(888) 807-2111, ON THE WEB AT  propertytax.lacounty.gov

ASSESSOR'S ID. NO. YR SEQ    CK

**PROPERTY IDENTIFICATION**
ASSESSOR'S ID. NO.:            23 000

OWNER OF RECORD AS OF JANUARY 1, 2023
NOT AVAILABLE ONLINE

**MAILING ADDRESS**
0045686-0045686 PDFEC 001 1234-- 572794

ASSESSEE NAME AND ADDRESS ARE NOT
AVAILABLE ONLINE PER CA GOV CODE §6254.21

| DETAIL OF TAXES DUE FOR | | 23 000 | 03 |
|---|---|---|---|
| **AGENCY** | **AGENCY PHONE NO.** | **RATE** | **AMOUNT** |
| GENERAL TAX LEVY | | | |
| ALL AGENCIES | | 1.000000    $ | 78,959.70 |
| VOTED INDEBTEDNESS | | | |
| CITY-LOS ANGELES | | .011448    $ | 903.93 |
| METRO WATER DIST | | .003500 | 276.36 |
| COMMNTY COLLEGE | | .060231 | 4,755.82 |
| UNIFIED SCHOOLS | | .124219 | 9,808.29 |
| DIRECT ASSESSMENTS | | | |
| FLOOD CONTROL | (626) 979-5498 | $ | 113.77 |
| CITY LT MAINT | (213) 847-1821 | | 106.13 |
| LA WEST MOSQ AB | (310) 915-7370 | | 13.95 |

**Save Money – Save Time – Pay Online**
ttc.lacounty.gov
**Electronic Payment Information
(Required for Online and Telephone Payments)**
ID#:19 4332 022 047 9 YEAR:23 SEQUENCE:000 3
**Personal Identification Number (PIN)**
PIN:    XRACKE

**SPECIAL INFORMATION**

DELINQUENT TAX INFORMATION:
YOU OWE BACK TAXES WHICH MAY RESULT IN YOUR
PROPERTY BEING SOLD.  THE AMOUNT OWING FOR
PRIOR YEARS IS NOT INCLUDED IN THIS STATEMENT.
PLEASE CONTACT US IMMEDIATELY TO DISCUSS
YOUR PAYMENT OPTIONS.

**PROPERTY LOCATION AND/OR PROPERTY DESCRIPTION**
1220 S BEDFORD ST          LOS ANGELE
TR=6749 LOTS 22 AND 23 BLK 3

| | VALUATION INFORMATION | |
|---|---|---|
| ROLL YEAR 23-24 | CURRENT ASSESSED VALUE | TAXABLE VALUE |
| LAND | 1,893,771 | 1,893,771 |
| IMPROVEMENTS | 6,002,199 B | 6,002,199 |

**ASSESSOR'S REGIONAL OFFICE**
REGION #07 INDEX:          TRA:00067
WEST DISTRICT OFFICE
500 W TEMPLE STREET #183-19
LOS ANGELES CA 90012
(310) 665-5300

ACCT. NO.:       PRINT NO.: 285686 BILL ID.:

| | |
|---|---|
| TOTAL | 7,895,970 |
| LESS EXEMPTION: | |
| NET TAXABLE VALUE | 7,895,970 |

| 1ST | $47,468.98 | 2ND | $47,468.97 | 1ST + 2ND | $94,937.95 |
|---|---|---|---|---|---|
| | DUE NOVEMBER 1, 2023 (After December 10, 2023, add 10% penalty) | | DUE FEBRUARY 1, 2024 (After April 10, 2024, add 10% penalty and $10 cost) | | IF PAYING BOTH BY DECEMBER 10, 2023 (Include 1st & 2nd stubs if paying by mail) |

ANY RETURNED PAYMENT MAY BE SUBJECT TO A FEE UP TO $50.00.          SEE REVERSE SIDE FOR MORE INFORMATION.

---

DETACH AND MAIL WITH YOUR PAYMENT
SAVE MONEY! SAVE TIME! PAY ONLINE!

**PRIOR DELINQUENCY**          **ANNUAL**          **2023**

ASSESSEE NAME AND ADDRESS ARE NOT
AVAILABLE ONLINE PER CA GOV CODE
§6254.21

FOR MAILING ADDRESS CHANGE
PLEASE SEE REVERSE SIDE OF THIS
PAYMENT COUPON.
2ND Installment Taxes due Feb. 1 and must ------------>
be received or USPS Postmarked by April 10
*If received or postmarked after, include
10% penalty and $10 cost*

**MAKE PAYMENT PAYABLE TO:**
Please write the ASSESSOR'S ID. NO.
on the lower left corner of your payment.
63063

ASSESSOR'S ID. NO. YR SEQ    CK          PK
23 000    03          2
2ND INSTALLMENT DUE          INDICATE AMOUNT PAID
$47,468.97

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

5222586063204l0

**2ND**

---

DETACH AND MAIL WITH YOUR PAYMENT
SAVE MONEY! SAVE TIME! PAY ONLINE!

**PRIOR DELINQUENCY**          **ANNUAL**          **2023**

ASSESSEE NAME AND ADDRESS ARE NOT
AVAILABLE ONLINE PER CA GOV CODE
§6254.21

FOR MAILING ADDRESS CHANGE
PLEASE SEE REVERSE SIDE OF THIS
PAYMENT COUPON.
1ST Installment Taxes due Nov. 1 and must ------------>
be received or USPS Postmarked by December 10
*If received or postmarked after, include
10% penalty*

**MAKE PAYMENT PAYABLE TO:**
Please write the ASSESSOR'S ID. NO.
on the lower left corner of your payment.
63076

ASSESSOR'S ID. NO. YR SEQ    CK          PK
23 000    03          1
1ST INSTALLMENT DUE          INDICATE AMOUNT PAID
$47,468.98

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

707611211

**1ST**

# IMPORTANT INFORMATION

For information about property tax assistance and relief programs, please visit our website at **ttc.lacounty.gov**
to view options under **SECURED (REAL) PROPERTY TAX PROGRAMS and SERVICES.**

**HOW YOUR PROPERTY TAX BILL IS CREATED AND WHAT OFFICE TO CONTACT FOR ADDITIONAL INFORMATION**

It takes three separate Los Angeles County offices, ASSESSOR, AUDITOR-CONTROLLER, and TREASURER AND TAX COLLECTOR to produce and account for your property tax bill and payment.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

The Los Angeles County **ASSESSOR** establishes the assessed value of your property by appraising the value of that property under State law. The assessed value of your property is placed on the "Assessment Roll." The Assessor also approves and applies all exemptions which are included in the Assessment Roll. The Roll is then presented to the Los Angeles County Auditor-Controller for further processing.

The items listed below are within the jurisdiction of the Assessor's Office and questions regarding these areas should be directed to that office; or, visit the website at **propertytax.lacounty.gov**:

| | |
|---|---|
| Assessed Values | Homeowners' Exemptions |
| Exemptions - General | Name/Mailing Address Changes |
| Reappraisable Changes in Ownership | Decline-in-Value Reviews |
| Parent-Child/Grandparent-Grandchild | Misfortune & Calamity Tax Relief |
| Transfers (Proposition 19) | |
| Age 55 and Older/Disabled Persons Tax Base Transfers (Proposition 19) | |
| Disaster Relief Tax Base Transfers (Proposition 19) | |

The Los Angeles County Assessor's Public Service Section is located in Room 225, 500 W. Temple St., Los Angeles, CA 90012-2770.

You may send a request for assistance by going to:
**assessor.lacounty.gov/contact/assessor**

The address and phone number of the Assessor's district office that handles your assessment is shown on the front of this bill.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

The Los Angeles County **AUDITOR-CONTROLLER** adds direct assessments to the Tax Roll then applies the General Tax Levy (1%) and Voted Indebtedness (voter & bonded) tax rates to the value on the Tax Roll. This function is called "extending the Assessment Roll." The Extended Roll is then sent to the Los Angeles County Treasurer and Tax Collector for individual tax bill distribution and payment collection.

Direct Assessment questions should be directed to the agency authorizing the charge at the telephone number shown on the face of this bill. This information is also available online at: **auditor.lacounty.gov/direct-assessments**.

The Los Angeles County Auditor-Controller is located in Room 153, 500 W. Temple St., Los Angeles, CA 90012-3552.

Website: **propertytax.lacounty.gov**

Information related to the items listed below are within the jurisdiction of the Auditor-Controller and questions regarding these areas should be directed to that office by email at **propertytax@auditor.lacounty.gov**:

| | |
|---|---|
| Direct Assessments | Refunds - Change in Taxes Due to an Assessor Value Change |
| General Tax Levy | Voted Indebtedness |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

The Los Angeles County **TREASURER AND TAX COLLECTOR** receives the Extended Roll, prints the property tax bills and mails them to the names and addresses on the Roll. When you send your remittance to pay your tax bill, the Treasurer and Tax Collector then posts that payment to your property. The Los Angeles County Treasurer and Tax Collector is located at 225 N. Hill St., Los Angeles, CA 90012-2798.

The items listed below are within the jurisdiction of the Treasurer and Tax Collector. Questions regarding these areas should be directed to this office:

| | | |
|---|---|---|
| Due Dates | Payment Amount | Refunds - Overpayments |
| Payment Posting | Penalties | Defaulted Taxes |

If these taxes remain unpaid after June 30th of the fiscal year indicated on the reverse side of this bill, you will be charged delinquency penalties, costs, redemption penalties, and a redemption fee.

School district parcel tax exemption information is available online at **ttc.lacounty.gov**.

**HOW TO CONTACT OUR OFFICE**

You may not need to speak with a representative for common requests. Please visit **ttc.lacounty.gov/public-inquiries** for self-service options or to submit an inquiry.

| | |
|---|---|
| Visit us: | 225 North Hill Street, First Floor Lobby, Los Angeles, CA 90012 |
| Call us: | 1(213) 974-2111, if outside of Los Angeles County, or 1(888) 807-2111, if in Los Angeles County. Anyone who is hearing impaired and has TDD equipment may leave a message at 1(213) 974-2196 or use California Relay Services at 1(800) 735-2929. |
| Website: | **propertytax.lacounty.gov** |

Si usted requiere información en Español acerca de los impuestos de su propiedad, por favor llame al 1(213) 974-2111 o al 1(888) 807-2111. Operadoras que hablan Español le ayudarán. También puede visitar nuestra página de Web al **propertytax.lacounty.gov**.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**LOS ANGELES COUNTY ASSESSMENT APPEALS BOARD**

The property taxes you pay are primarily based on your property's assessed value as determined by the Los Angeles County Assessor. If you disagree with the assessed value placed on your property, you can file an appeal with the ASSESSMENT APPEALS BOARD during the filing periods stated below. **Applications may be filed online at: lacaab.lacounty.gov**.

**Regular Assessments** - Filing period is July 2 through November 30.
**Supplemental/Adjusted/Escape/Roll Corrections** - No later than 60 days after the mailing date on the notice or tax bill.
**Misfortune & Calamity Reassessments** - Within six months of the mailing date of the Assessor's proposed reassessment notice due to property damaged by misfortune or calamity.

For more information, please visit **bos.lacounty.gov/services/assessment-appeals/aab-resources**.

The Los Angeles County Assessment Appeals Board is located at 500 W. Temple St., Room B4, Los Angeles, CA 90012; Telephone numbers: 1(213) 974-1471; 1(888) 807-2111; 1(800) 735-2929 (TDD);
Website: **bos.lacounty.gov/Services/Assessment-Appeals**.

**Electronic Check Processing** - When you provide a check as payment, you authorize the County of Los Angeles to either use information from your check to make a one-time electronic fund transfer from your bank account or process the payment as a check transaction. If we use information from your check to make an electronic fund transfer, funds may be withdrawn from your bank account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. The transaction will appear on your bank statement as "LA Co TTC Paymnt."

**TO PAY ONLINE, CHANGE YOUR MAILING ADDRESS,**

**OR**

**ACCESS ADDITIONAL SELF-SERVICE OPTIONS,**

**PLEASE VISIT propertytax.lacounty.gov**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**TO PAY ONLINE, CHANGE YOUR MAILING ADDRESS,**

**OR**

**ACCESS ADDITIONAL SELF-SERVICE OPTIONS,**

**PLEASE VISIT propertytax.lacounty.gov**

76A550 (08/2023)

## IMPORTANT INFORMATION

For information about property tax assistance and relief programs, please visit our website at **ttc.lacounty.gov**
to view options under **SECURED (REAL) PROPERTY TAX PROGRAMS AND SERVICES.**

**HOW YOUR PROPERTY TAX BILL IS CREATED AND WHAT OFFICE TO CONTACT FOR ADDITIONAL INFORMATION**

It takes three separate Los Angeles County offices, ASSESSOR, AUDITOR-CONTROLLER, and TREASURER AND TAX COLLECTOR to produce and account for your property tax bill and payment.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

The Los Angeles County **ASSESSOR** establishes the assessed value of your property by appraising the value of that property under State law. The assessed value of your property is placed on the "Assessment Roll." The Assessor also approves and applies all exemptions which are included in the Assessment Roll. The Roll is then presented to the Los Angeles County Auditor-Controller for further processing.

The items listed below are within the jurisdiction of the Assessor's Office and questions regarding these areas should be directed to that office; or, visit the website at **propertytax.lacounty.gov**.

| | |
|---|---|
| Assessed Values | Homeowners' Exemptions |
| Exemptions - General | Name/Mailing Address Changes |
| Reappraisable Changes in Ownership | Decline-in-Value Reviews |
| Parent-Child/Grandparent-Grandchild Transfers (Proposition 19) | Misfortune & Calamity Tax Relief |
| Age 55 and Older/Disabled Persons Tax Base Transfers (Proposition 19) | |
| Disaster Relief Tax Base Transfers (Proposition 19) | |

The Los Angeles County Assessor's Public Service Section is located in Room 225, 500 W. Temple St., Los Angeles, CA 90012-2770.

You may send a request for assistance by going to:
**assessor.lacounty.gov/contact/assessor**

The address and phone number of the Assessor's district office that handles your assessment is shown on the front of this bill.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

The Los Angeles County **AUDITOR-CONTROLLER** adds direct assessments to the Tax Roll then applies the General Tax Levy (1%) and Voted Indebtedness (voter & bonded) tax rates to the value on the Tax Roll. This function is called "extending the Assessment Roll." The Extended Roll is then sent to the Los Angeles County Treasurer and Tax Collector for individual tax bill distribution and payment collection.

Direct Assessment questions should be directed to the agency authorizing the charge at the telephone number shown on the face of this bill. This information is also available online at: **auditor.lacounty.gov/direct-assessments**.

The Los Angeles County Auditor-Controller is located in Room 153, 500 W. Temple St., Los Angeles, CA 90012-3552.

Website: **propertytax.lacounty.gov**

Information related to the items listed below are within the jurisdiction of the Auditor-Controller and questions regarding these areas should be directed to that office by email at **propertytax@auditor.lacounty.gov**.

| | |
|---|---|
| Direct Assessments | Refunds - Change in Taxes Due to an Assessor Value Change |
| General Tax Levy | Voted Indebtedness |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**Electronic Check Processing** - When you provide a check as payment, you authorize the County of Los Angeles to either use information from your check to make a one-time electronic fund transfer from your bank account or process the payment as a check transaction. If we use information from your check to make an electronic fund transfer, funds may be withdrawn from your bank account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. The transaction will appear on your bank statement as "LA Co TTC Paymnt."

The Los Angeles County **TREASURER AND TAX COLLECTOR** receives the Extended Roll, prints the property tax bills and mails them to the names and addresses on the Roll. When you send your remittance to pay your tax bill, the Treasurer and Tax Collector then posts that payment to your property. The Los Angeles County Treasurer and Tax Collector is located at 225 N. Hill St., Los Angeles, CA 90012-2798.

The items listed below are within the jurisdiction of the Treasurer and Tax Collector. Questions regarding these areas should be directed to this office:

| | | |
|---|---|---|
| Due Dates | Payment Amount | Refunds - Overpayments |
| Payment Posting | Penalties | Defaulted Taxes |

If these taxes remain unpaid after June 30th of the fiscal year indicated on the reverse side of this bill, you will be charged delinquency penalties, costs, redemption penalties, and a redemption fee.

School district parcel tax exemption information is available online at **ttc.lacounty.gov**.

**HOW TO CONTACT OUR OFFICE**

You may not need to speak with a representative for common requests. Please visit **ttc.lacounty.gov/public-inquiries** for self-service options or to submit an inquiry.

| | |
|---|---|
| Visit us: | 225 North Hill Street, First Floor Lobby, Los Angeles, CA 90012. |
| Call us: | 1(213) 974-2111, if outside of Los Angeles County, or 1(888) 807-2111, if in Los Angeles County. Anyone who is hearing impaired and has TDD equipment may leave a message at 1(213) 974-2196 or use California Relay Services at 1(800) 735-2929. |
| Fax us: | 1(213) 620-7948 |
| Write us: | Treasurer and Tax Collector, P.O. Box 512102, Los Angeles, CA 90051-0102 |
| Website: | **propertytax.lacounty.gov** |

Si usted requiere información en Español acerca de los impuestos de su propiedad, por favor llame al 1(213) 974-2111 o al 1(888) 807-2111. Operadoras que hablan Español le ayudarán. También puede visitar nuestra página de Web al **propertytax.lacounty.gov**.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**LOS ANGELES COUNTY ASSESSMENT APPEALS BOARD**

The property taxes you pay are primarily based on your property's assessed value as determined by the Los Angeles County Assessor. If you disagree with the assessed value placed on your property, you can file an appeal with the ASSESSMENT APPEALS BOARD during the filing periods stated below. **Applications may be filed online at: lacaab.lacounty.gov**.

**Regular Assessments** - Filing period is July 2 through November 30.

**Supplemental/Adjusted/Escape/Roll Corrections** - No later than 60 days after the mailing date on the notice or tax bill.

**Misfortune & Calamity Reassessments** - Within six months of the mailing date of the Assessor's proposed reassessment notice due to property damaged by misfortune or calamity.

The Los Angeles County Assessment Appeals Board is located at 500 W. Temple St., Room B4, Los Angeles, CA 90012; Telephone numbers: 1(213) 974-1471; 1(888) 807-2111; 1(800) 735-2929 (TDD);
Website: **bos.lacounty.gov/Services/Assessment-Appeals**.

-----

## CHANGE OF MAILING ADDRESS

If your name does not appear on the front of this stub, or you need assistance regarding the Recording Document Number/Title Recording Date, please contact the Los Angeles County Assessor's Office at 1(213) 974-3441.

Print Owner's Name

Street Number          Street Name          Apartment Number

City          State          Zip Code          –

Recording Document Number (if known)          Title Recording Date (if known)          Daytime Phone Number

Owner's Signature (Required)          Property Owner's Agent Name (if any) Last/First          Date

**Please check the mailing address change box on the front of this stub.**

-----

## CHANGE OF MAILING ADDRESS

If your name does not appear on the front of this stub, or you need assistance regarding the Recording Document Number/Title Recording Date, please contact the Los Angeles County Assessor's Office at 1(213) 974-3441.

Print Owner's Name

Street Number          Street Name          Apartment Number

City          State          Zip Code          –

Recording Document Number (if known)          Title Recording Date (if known)          Daytime Phone Number

Owner's Signature (Required)          Property Owner's Agent Name (if any) Last/First          Date

**Please check the mailing address change box on the front of this stub.**

76A550 (08/2022)

Exhibit 11

☰ Menu    🌐 English

Apartments.com™

Manage Rentals    Sign Up / Sign In    Add a Property

Move-In Date

1226 S Bedford St, Los Angeles, CA 9(    🔍

Price ▾    Beds/Baths ▾    Home Type ▾    Specialty Housing ▾

Options

Draw Boundary

Apartments Near 1226 S Bedford St
6 Rentals Available

**$5,895**
3 Beds, 4 Baths, 1,716 sq ft
1226 S Bedford St Unit 504
1226 S Bedford St Unit 504,...
(323) 443-6005    Email

$5,354
3 Beds, 4 Baths, 1,660 sq ft
1226 S Bedford St Unit 302
1226 S Bedford St Unit 302,...
(323) 443-6005    Email

$4,616
3 Beds, 4 Baths, 1,638 sq ft
1226 S Bedford St Unit 104
1226 S Bedford St Unit 104, ...
(323) 443-6005    Email

$4,616
3 Beds, 4 Baths, 1,638 sq ft
1226 S Bedford St Unit 103
1226 S Bedford St Unit 103, ...
(323) 443-6005    Email

$4,420

+

−

Erase Outline

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1920 Old Tustin Ave, Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 01/20/2026   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Counsel for Debtor(s): Thomas B Ure, Ure Law Firm, 8280 Florence Avenue, Suite 200, Downey, CA 90240
Attorney for US Trustee: David Samuel Shevitz, David.S.Shevitz@usdoj.gov
U.S. Trustee: ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 01/20/2026   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor(s): Marmar Bedford, LLC, 493 S. Robertson Blvd., Beverly Hills, CA 90211
Party of Interest: Marvin Markowitz, 493 S. Robertson Blvd., Beverly Hills, CA 90211
Junior Lien Holder: Evoque Lending, 9440 Santa Monica Blvd., Suite 301, Beverly Hills, CA 90210

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 01/20/2026   , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Judge Sheri Bluebond,United States Bankruptcy Court, Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/20/2026 | Salina Padilla | /s/ Salina Padilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 12                    **F 4001-1.RFS.RP.MOTION**

## 20 Largest Unsecured Creditors

Franchise Tax Board
Bankruptcy Section MS A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346